BARKLEY v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

1. **Railroad**: OBSTRUCTING CROSSINGS AT DEPOT. A railroad company is necessarily compelled, in the transaction of its business, to permit crossings at its depots to be obstructed at times by its trains.

2. ——: ——: NEGLIGENCE. A person injured at such crossing by one of the trains cannot recover because of such obstruction unless the crossing was kept closed for an unreasonable length of time and the injury was the proximate result of the company's unreasonable delay in removing the train from the crossing.

3. ——: STARTING TRAIN. Where the starting of a train did not directly contribute to the accident, one injured by it cannot recover on the ground that no signal for starting was given.

4. ——: NEGLIGENCE: PROXIMATE CAUSE. A person injured by a train cannot recover therefor where the direct and immediate cause of the accident was his own stumbling and falling in the way of the train.

*Appeal from Jackson Circuit Court.*—HON. T. A. GILL, Judge.

REVERSED.

*Thos. J. Portis* and *Adams & Bowles* for appellant.

(1) There is no connection between the alleged negligent acts of defendant and the plaintiff's injuries, and his own evidence shows that they were not the proximate cause thereof, and the demurrer to the evidence should have been sustained. *Mathiason v. Mayer*, 90 Mo. 585; *Stepp v. Railroad*, 85 Mo. 229; *Harlan v. Railroad*, 65 Mo. 22; *Henry v. Railroad*, 76 Mo. 293; *Powell v. Railroad*, 76 Mo. 80; *Lenix v. Railroad*, 76 Mo. 86; *Railroad v. Staley*, 41 Ohio St. 118; *Jackson v. Railroad*, 13 Lea [Tenn.] 491; *Burns v. Rolling Mill*

*Co.*, 60 Wis. 541 ; *Hatfield v. Railroad*, 61 Iowa, 434.
(2) In this case there is such a strong preponderance of
the evidence against the plaintiff that justifies the grant-
ing a new trial. It must be apparent from the record
that an injustice has been done. *Chase v. Debolt*, 2
Gilman [Ill.] 371 ; *Boyle v. Levings*, 24 Ill. 223 ; *Clement
v. Bushway*, 25 Ill. 200. (3) The plaintiff's second
instruction is simply an abstract proposition, and has no
application to the case at bar. The situation of plain-
tiff alongside of defendant's train could apprise no one
of any danger he was in. The instruction is faulty in
that it does not charge that defendant's servants did see
plaintiff. It ignores the contributory negligence of
plaintiff and of his parents pleaded. *Sullivan v. Rail-
road*, 88 Mo. 169 ; *Hallihan v. Railroad*, 71 Mo. 113 ;
*Jones v. Talbot*, 4 Mo. 279 ; *Hickman v. Griffin*,
6 Mo. 37 ; *Clay v. Railroad*, 17 Mo. App. 629 ;
*Evans v. Railroad*, 16 Mo. App. 522. (4) In plain-
tiff's fourth instruction the jury are told that if they
believe that plaintiff was passing between the mov-
ing freight train and other cars standing on another
track and plaintiff fell and was run over and injured,
then they must find for him. There was no proof that
any negligence of defendant caused him to fall. There
was no proof either that defendant's employes saw
plaintiff in a situation of danger. To make defendant
liable where plaintiff has also been negligent, it should
appear that the proximate cause of the injury was
defendant's omission, after becoming aware of plain-
tiff's danger, to use a proper degree of care to avoid
injuring him. *Maher v. Railroad*, 64 Mo. 276 ; *Karle
v. Railroad*, 55 Mo. 484 ; *Isabel v. Railroad*, 60 Mo.
482. (5) The plaintiff's sixth instruction should not
have been given. *Stepp v. Railroad*, 85 Mo. 232 ; *Harlan
v. Railroad*, 65 Mo. 22 ; 1 Rorer on Railroads, 528. (6) As
a matter of law it was negligent in the parents to permit
plaintiff to go about the defendant's cars and trains, if

he was too young to exercise any discretion, and the defendant's seventh, thirteenth and eighteenth instructions should have been given. *Stillson v. Railroad,* 67 Mo. 671–676 ; *Koons v. Railroad,* 65 Mo. 592 ; *Frick v. Railroad,* 65 Mo. 547 ; *Meeks v. Railroad,* 52 Cal. 602 ; *Hatfield v. Roper,* 21 Wend. 615. (7) The defendant's seventh instruction should have been given. The law does not require railroad companies to keep a watch to see if persons are attempting wrongfully to ride upon the sides of its cars. *Henry v. Railroad,* 76 Mo. 295 ; *Hallihan v. Railroad,* 71 Mo. 117, 118 ; *Shaick v. Railroad,* 43 N. Y. 527. (8) Instructions numbered fifteen and sixteen should have been given. There was no evidence that any of defendant's employes knew that plaintiff was clinging to one of its cars, nor of any wilful or wanton negligence whereby he was injured. And, under the facts in this case, to render the defendant liable the injury must have been an intentional one, which would be wanton. *Nelson v. Railroad,* 68 Mo. 593 ; *Sweigert v. Railroad,* 75 Mo. 480. (9) The court erred in giving instruction numbered three on its own motion. It is clearly not the law of this state. In it the jury were told that "if they believe that any witness had sworn falsely to any material fact, they are at liberty to disregard his entire testimony." The instruction omits the essential elements of wilfulness or knowledge, and it was manifest error to give it. *Evans v. Railroad,* 16 Mo. App. 522 ; *State v. Elkins,* 63 Mo. 166 ; *Bank v. Murdock,* 62 Mo. 74 ; *State v. Brown,* 64 Mo. 374 ; *Shenuit v. Breuggestradt,* 8 Mo. App. 46. The instruction should also have included the hypothesis of the knowledge of the witness as to the falsity of his testimony. See cases cited *supra* ; *Paulett v. Brown,* 40 Mo. 57, and cas. cit. (10) The damages are exorbitant and grossly excessive. *Railroad v. McKean,* 40 Ill. 218 ; *Building Ass'n v. Loomis,* 20 Ill. 235 ; *Railroad v.*

*Parks*, 18 Ill. 460 ; *Railroad v. Vanatta*, 21 Ill. **188** ; *Schlincker v. Resly*, 3 Scam. 483.

*A. Comingo* and *Gates & Wallace* for respondent.

(1) Whether the defendant's negligence is the proximate cause of the plaintiff's injury is a question for the jury. *Farris v. Railroad*, 80 Mo. 325 ; *Dunn v. Railroad*, 21 Mo. App. 188 ; *Dougherty v. Railroad*, 81 Mo. 325 ; *Railroad v. Kellogg*, 94 U. S. 469 ; *Stark v. Lancaster*, 57 N. H. 88 ; *Lake v. Milliken*, 62 Me. 240. (2) The negligence of the defendant was the proximate cause of the plaintiff's injury, and the jury were correct in so finding. Courts and law-writers have many ways of stating the question of proximate and remote cause, and have formulated a variety of rules applicable to the subject. (*a*) Thus if one is placed, by the negligence of another, in a place of immediate danger, real or apparent, and accidentally receives an injury in attempting to escape the danger, he has a right of action. Thompson on Neg. 1092 ; *Coulter v. Express Co.*, 56 N. Y. 585 ; *Pittsburg v. Grier*, 22 Pa. St. 54 ; *Sears v. Dennis*, 105 Mass. 310 ; *Card v. Elsworth*, 65 Me. 547. (*b*) Or where the injury is the combined result of the negligence of the defendant and a pure accident, the defendant is liable, unless the injury would have happened without the negligence of the defendant. *McDermott v. Railroad*, 87 Mo. 285 ; *Nagel v. Railroad*, 75 Mo. 661 ; Thompson on Neg. 1085 ; *Bassett v. City*, 53 Mo. 290 ; *Palmer v. Inhabitants*, 2 Cush. 600 ; *Titcomb v. Railroad*, 12 Allen, 254 ; *Austin v. Steamboat Co.*, 43 N. Y. 75. (3) If there is any evidence to support the finding of the court below, this court will not disturb the judgment. (4) Where the plaintiff has negligently placed himself in a dangerous situation, it is not necessary, in order to make the defendant liable, that he should have actually discovered the plaintiff's situation of danger in time to have

avoided the injury. If, by the exercise of ordinary care, he might have discovered the situation of the plaintiff in time and thus prevented the injury, such negligence is regarded as the proximate cause, and the defendant is liable. *Frick v. Railroad,* 75 Mo. 595; *Werner v. Railroad,* 81 Mo. 368; *Bergman v. Railroad,* 88 Mo. 683; *Scoville v. Railroad,* 81 Mo. 434; *Burnham v. Railroad,* 56 Mo. 338; *Welsh v. Railroad,* 81 Mo. 466; *Kelly v. Railroad,* 75 Mo. 138; *Donahue v. Railroad,* 83 Mo. 543. (5) In imputing the negligence of the parent to the child, there is a distinction to be observed between an action by the parent for the death or the loss of the services of the child, and an action by the child to recover for its own injuries. In the latter case the negligence of the parent is no defense. *Donahue v. Railroad,* 83 Mo. 543; Wharton on Neg., secs. 309–312; *Railroad v. Hanlon,* 53 Ala. 70; *Railroad v. Snyder,* 18 Ohio St. 399; *Railroad v. Manson,* 30 Ohio St. 451; *Railroad v. Ormsby,* 27 Gratt. 455; *Railroad v. Moore,* 59 Tex. 64; *Whirley v. Whiteman,* 1 Head. 610; *Daley v. Railroad,* 26 Conn. 591; *Huff v. Ames,* 16 Neb. 139. (6) The damages were not excessive. The plaintiff, a sprightly boy of six, lost his right arm at the shoulder. The verdict was for seven thousand dollars. *Porter v. Railroad,* 71 Mo. 66; *Waldhier v. Railroad,* 87 Mo. 47; *Blair v. Railroad,* 89 Mo. 383; *Drain v. Railroad,* 86 Mo. 574. No complaint is made of plaintiff's instruction numbered seven. It properly defined the measure of damages. (7) It is the duty of railroad companies, in the management and operation of their trains, at public crossings in towns and villages, to exercise greater care and caution than in the country or in their private switch-yards. They must use care and caution proportionate to the danger to be apprehended. *Frick v. Railroad,* 75 Mo. 595; *Brown v. Railroad,* 50 Mo. 461; *Isabel v. Railroad,* 60 Mo. 475; *Cooper v. Railroad,* 10 West. Rep. 184;

*Keim v. Railroad,* 90 Mo. 314; *Huckshold v. Railroad,* 90 Mo. 548.

BRACE, J.—In this case the plaintiff, who is an infant (aged about six years at the time of his injury), obtained a judgment against the defendant for seven thousand dollars, from which the defendant appeals.

The petition, after averring defendant's corporate existence, alleges in substance: "That the defendant, while operating its railroad by its servants, drew a train of freight cars on a side-track at one of its stations, to-wit, at the town of Greenwood, in Jackson county, so as to wholly obstruct the approach to its said station, for half an hour; that while said train was standing on said side-track, one of defendant's passenger trains arrived at said station; that plaintiff, desiring and intending to reach said depot and the platform thereat, by the usual approach thereto, attempted to cross its said track; that owing to the fact that its said approach to its said station and platform was thus obstructed by defendant's freight train which defendant had carelessly, negligently and wrongfully left standing on said side-track, plaintiff was unable to reach said depot by the usual approach thereto; that in order to reach, and for the purpose of reaching the depot, plaintiff was compelled to pass, and attempted to pass around said freight train; that at the time there were standing on a side-track southwest of said freight train, and but a few feet distant therefrom, a number of defendant's freight cars; that in order to pass around the freight train, it was necessary for plaintiff to pass between said stationary cars and said freight train; that while plaintiff was so between said stationary cars and said freight train, defendant's servants and employes carelessly and negligently started to move said freight train from said station, and in so doing carelessly and negligently ran the same over plaintiff, and greatly injured and maimed him by crushing his right arm under the wheels of said

freight train, so that it had to be amputated near his shoulder, and he suffered great pain and anguish and was rendered a cripple for life, and was damaged in the sum of twenty thousand dollars."

Defendant's answer is a general denial, and further pleads that at the time of the happening of the injuries to the plaintiff, he was attempting to steal a ride on the freight train aforesaid; that he took hold of and on to a portion of one of the freight cars until it had acquired a considerable speed, when he attempted to leave the car, and in so doing he fell and the wheels passed over his arm; that he had, prior to that time, constantly been in the habit of climbing upon and clinging to the cars about the depot, and had been repeatedly told not to do so, and warned of the danger to him; that the father and mother of plaintiff, he being a boy of about six years of age, were guilty of negligence in permitting him to go about the defendant's depot and tracks, where dangerous and ponderous machinery is used, without being in charge of some other person, and in directing and sending him there, and in allowing him to ride upon and cling to the trains as aforesaid.

Plaintiff's reply is a general denial. On the trial the defendant objected to the introduction of any evidence on the part of the plaintiff on the ground that the petition does not state a cause of action. Its objection was overruled. At the close of plaintiff's testimony, defendant demurred to it for insufficiency, which was overruled, and at the close of all the evidence asked the court to instruct the jury, " that under the pleadings and all the evidence in the cause the plaintiff cannot recover," which was refused, and the case submitted to the jury on the instructions given, after refusal to give several of those asked by the defendant.

The uncontradicted evidence was: That passing in front of the depot at the town of Greenwood, the defendant has three tracks six feet ten inches apart (a main track, and two switches, one for passing trains, the

other for station cars), running parallel with each other in a general direction from southeast to northwest, or *vice versa.* The depot is on the north and the town is on the south side of these tracks. The depot fronts towards the town and has a platform in front of it, extending east of the depot, about two hundred feet, and east of the east end of the platform, distant a few feet, is a public crossing. Immediately in front of the depot, and about two hundred and fifty feet west from the public crossing, was another crossing used in going to and from the town to the depot, the ground south of the tracks, in front of the depot and between them and the public road, leading from the postoffice to the public crossing, being vacant. The freight train, by which plaintiff was injured, was going west and was drawn in on the "passing" or middle track to permit a passenger train going east to pass it. It remained on the passing track until the passenger train arrived, and cleared the switch, a period of from twenty to thirty minutes. The train contained from twenty to twenty-five cars, and while remaining on the passing track, blocked both the public and depot crossings. West of the depot crossing on the station or "house" track there were standing two or three box cars, alongside a grain-house which stood on the south side of that track. At a point between these cars and the freight train about two hundred feet west of the depot crossing the injury occurred.

The plaintiff's testimony was in substance that, during the day on which he was hurt, he was at school; that about half-past four in the afternoon, after school was dismissed, he started down to the depot to get a paper; that he did not go to the public crossing, but went to the depot crossing, near the grain-house; that he found that a freight train was across the crossing and he could not get across; that he started to go around the train in front of the engine; the train commenced to move and he then started back towards the caboose, to go around by the road up to the postoffice to get the paper, "ran

back a piece," when he stumbled and fell on his back and his arm went under the train, and the train passed over it ; that his father had told him to go to the depot and get the paper ; that when he came to the freight train near the depot crossing it was standing still ; that it started while he was running towards the engine to get around it, and that he stumbled and fell while he was running back towards the caboose.   The other evidence for the plaintiff tended to prove that the tracks in front of the depot were straight ; that the space over which the boy ran forward and backward and the point where he was injured could be seen from the engine and the caboose, and that no signal was given immediately before or at the time the train started.

The evidence for the defendant tended to prove that after plaintiff started to go round the freight train, it began to move and he took hold of the iron ladder running up the side of one of the cars, drew himself on to the ladder, and clung there until the train got to going pretty fast, when he jumped off, stumbled and fell, threw his arm out and the train ran over it.   This is the substance of the testimony of the three young companions of the boy who were with him at the time.   The defendant's testimony further tended to prove that plaintiff was frequently about the depot, and sometimes on the cars, and that he had previously been warned not to get on them ; that the men on the train did not see the boy on this occasion, did not know and did not hear of the accident until several months afterwards.

Conceding that the negligence of the father, in sending so young a boy to the depot for his paper, cannot be imputed to the boy in this action, and that he is to be held only to that care and prudence to be reasonably expected of a boy of his age and understanding, a recovery in this case upon the pleadings and this evidence could be had only upon the ground that the injury was proximately caused by the negligence of defendant's servants either (1) in stopping its freight train on the

"passing track" for a period of twenty or thirty minutes without opening it at the crossings ; (2) in starting it without giving a signal ; (3) in starting it after having discovered, or by the exercise of reasonable care they might have discovered that he was in a perilous situation ; or (4) in not stopping the train in time to prevent the injury after having discovered, or by the exercise of reasonable care they might have discovered, that plaintiff was in a perilous situation.

I. The failure of defendant's servants to open a passway at the public crossing was in no way connected with the injury. There is no evidence tending to show that the plaintiff desired, intended or at any time attempted to cross the tracks at the public crossing. He was not a traveler on the public highway. He went to a point near the grain-house lot to cross the tracks at the depot crossing. That was the crossing he intended to cross and its being blocked was what deflected his course. While, in view of the purpose for which that crossing was made, and the use of it by the public as an approach to the depot, it was the duty of the defendant's servants at all times, in the management of its trains, when approaching, while on and when leaving it to exercise a care and caution commensurate with the danger naturally arising from such use, it was not their duty to keep it constantly open. Erected for the convenience of the public to approach and transact business with the railroad, its use to some extent must be subordinated to the exigencies of that business. In order that the company's servants may transact that business expeditiously and without danger to passengers that may be on its trains, or to persons who may be desirous of crossing its tracks to the depot, it will at times be absolutely necessary that such crossing should be blocked for a time. Nothing can be more reasonable than that a train due at a passing station should remain on a track erected for that purpose until the train due there from the opposite direction passes.

The time of the arrival of the delayed train is nec-
essarily to some extent uncertain and those· conducting
the business must, in the first place, be the judge
whether it promises to be so long as to justify opening
the crossing for the convenience of the public, or
whether its arrival is so imminent as to require that the
waiting train should remain closed and ready to start
immediately upon its coming in and clearing the switch,
so that the waiting train may not be made the source of
increased danger· to passengers and others by unneces-
sary and unprovided for delay, and to persons seeking to
cross whose vision of the incoming train right and left
might be obstructed by the cars on either side of the
crossing if it was opened. At such a crossing the ser-
vants of the company are culpable only when the cross-
ing is kept closed for an unreasonable length of time,
and the company liable only when the injury is the
proximate result of such unreasonable delay in opening
it. It may be conceded that the crossing was obstructed
by the freight train longer than was reasonably neces-
sary, yet the evidence fails to show that such delay was
the cause of the injury in this case. The duty of the
company to the plaintiff, if any, was to have the
approach open when he came to the crossing; that it
was not open before he came to it, was no breach· of that
duty, and no cause of injury to him. The only ques-
tion is, was it the duty of the company to have it open
when he came to the crossing, and was the accident the
direct result of their failure to discharge that duty?
The plaintiff's evidence clearly shows that it was not
their duty to have had it open at that time. On the con-
trary, it shows that his coming to the crossing, his
starting to go around the front of the freight train, the
coming in of the passenger train, and the starting of the
freight train as soon as the passenger cleared the end of
the running switch, if they could not strictly be called
simultaneous movements, at least followed each other in

the order mentioned in as quick succession as it was reasonably possible for such movements to follow each other. Instead of showing that it was their duty to have had the crossing open at that time, it shows it was their duty then to have had the train closed and ready to start even if it previously had been open. The evidence further on shows that although the crossing being then blocked caused plaintiff to deflect his course, it was not the immediate cause of the injury he received, even if it had been their duty to have had it open.

II. It may be conceded that when a train has been standing for a period of twenty or thirty minutes on a track, at a depot, at a village or town over an approach to the depot, that it is the duty of those in charge of the train to give a proper signal of their intention to start, so that those who may be on or about the track may be warned of approaching danger in time to get out of the way of the moving cars, and that those who are about going in the way may refrain from so doing. And where an injury is received by a person who goes in the way of any of the cars, or being in, fails to get out of the way in time, not knowing that the train is about to start, or is in motion, relying upon the duty of the servants of the railroad company to give such signal, and it is not given, such injury being the proximate effect of such failure, a recovery may be had. But where one is injured, who is not in the way of the cars when they start, or when they are moving, and who does not go in the way either before or after they start, or even attempt to do so because of his ignorance that they are going to start or are in motion, who is not injured by the starting of the train, knows it has started and is in motion, and is not injured by the train while in motion until he is thrown in its way by some other agency, it is plain to be seen whatever other, if any act of negligence of the defendant's servants may have contributed to the injury, the failure to give the starting or moving signal, could not have

directly done so. When the freight train was about to start, the plaintiff was beside the track, out of the passage-way of the cars in the freight train. He knew when it started, he knew it was in motion, when he abandoned his intention of going forward around the engine, for that was the very reason that induced him to change his course and turn back towards the caboose, and to abandon his intention of going to the depot or of crossing the track at all, but instead to go up by the public road to the post-office, which was on the same side of the tracks that he was, to get his paper. How, then, can it be said that the failure to give a starting signal, or a signal that the train was in motion, was the proximate cause of the injury received by him from the moving train, when he stumbled on his way back to the caboose? The most that can be said for the suggestion is, that if the defendant's servants had given a signal that the train was about to start, the plaintiff might not have started to go around the engine, or if he had started, he might not have gone so far, he would not have turned back when he did, and might not have stumbled and been injured on his return, but this argument removes the suggestion out of the line of actual causation into the open field of mere conjecture, to say nothing of the distance at which it places the effect from the cause.

III. From what has been said, it will be seen that if the plaintiff can recover at all, it must be upon the ground either that at the time the train started he was in such a situation that the starting of the train was perilous to him and defendant's servants knew it, or by the exercise of reasonable care might have known it, or that after the train commenced to move, he was in a perilous situation, and that defendant's servants knew it, or by the exercise of reasonable care might have discovered it in time to have stopped the train and prevented the injury. There is no evidence in the case that

any of the servants of the defendant actually knew the situation of the plaintiff, either before or after the accident. But let it be conceded that they were at their posts and actually did know it, and then from the facts in evidence in the case make the strongest inference possible in favor of the plaintiff as to the place where he was at the time the train started and up to the time he was injured, and confine his movements during that period to the space between the two tracks occupied on the "passing track" by the freight train and on the "house track" by the two or three box cars there were on it, we then have this state of case: The passenger train, for which the freight has been waiting, has arrived and cleared the switch; the train must go; the engineer and fireman are on the engine; the track is clear in front; the brakemen are at their posts, the conductor at his, near the caboose; before giving the signal, he looks along the train and sees the boy; he is between his train and the two or three box cars; there is five feet, ten inches between the tracks, and at least three feet space between the cars on the tracks; he sees that the boy is clear of the track, with ample space to move and not close enough to it to be struck by any of the cars; that he is not going towards the track but straight forward; he gives the signal to start; the train, as all freight trains do, starts slowly on its journey; he keeps his eye upon the boy, and as the train moves along, he sees him stop, at a safe distance from the moving cars, turn and retrace his steps, still at a safe distance from the passing cars; suddenly he stumbles and falls on his back, and in falling throws out one of his arms across the rail and the train passes over it.

This is the view the evidence of the plaintiff presents of the circumstances that attended the injury. Can it be said that the conductor, in view of his duty to move his train, and to act with that promptness that the nature of the business requires, has been guilty of carelessness in starting the train, or that there was any

Barkley v. The Mo. Pac. Ry. Co.

want of ordinary care in its management after it commenced to move ? Has he not acted in the discharge of his duty as an ordinarily prudent man would act who was compelled to perform that duty ? There was not a moment of time during the whole of the scene before the boy fell when he was in actual danger, or when any one could reasonably apprehend that he would go into danger, none of his actions indicated it, and but for his stumbling he would in all human probability have not met with the injury. His stumbling was an accident that the defendant's servants could not anticipate or be expected to provide against. When he fell, he then for the first time was placed in a situation of peril, and the injury followed almost instantaneously the exposure to it, and there was no time in which to stop the train before the injury was inflicted. The injury was the direct and immediate result of an unexpected and unavoidable accident which neither the plaintiff nor the servants of the defendant could reasonably have foreseen. The cause of action set out in the plaintiff's petition and the facts presented in evidence by the plaintiff in support thereof, are radically variant from the state of case made by the evidence for the defendant, and as the plaintiff must recover if at all, on the cause of action stated in the petition, it is unnecessary to discuss a possible case on the evidence for the defendant, which has not been considered except so far as in any particular it may have tended to support the cause of action stated in the petition. And as in the evidence in support of that cause of action, we fail to see that the injury to the plaintiff was caused by any failure on the part of defendant's servants to discharge its duty to the plaintiff, we think the instruction to the jury, that on the pleadings and evidence they must find for the defendant, should have been given.

The judgment is therefore reversed for the refusal of the court to so instruct. All concur, except RAY, J., absent.