# SCHMITT et al., Appellants, v. THE MISSOURI PACIFIC RAILWAY COMPANY.

## Division Two, February 12, 1901.

1. **New Trial:** NEWLY-DISCOVERED EVIDENCE. A new trial ought not to be granted on the ground of newly-discovered evidence after the verdict, unless it is so material that it would probably produce a different result on a retrial. And the trial court is better situated to judge as to whether or not it would probably produce a different result than is the appellate court. And hence much must be conceded to the discretion of the court in its rulings in regard to the matter. And where the statements and affidavits of the new witnesses seem incredible, as in this case, there will be no interference on that account.

2. **Negligence:** RINGING BELL: CONTRIBUTORY NEGLIGENCE. When the instructions, when all read together, amount to a declaration that although a railroad company may have been guilty of negligence in failing to ring the train's bell at the point where the deceased was killed, as the ordinance and statutes require, yet if deceased was guilty of negligence contributing to his injury, he could not recover, they are not erroneous. Failure to ring the bell is negligence in itself, but such negligence will warrant a recovery by plaintiff only when it appears that obedience to the requirements of the ordinances would have prevented the injury, but not otherwise. For it is well-settled law that one who walks on a railroad track without looking and listening for approaching trains is guilty of negligence, and if such negligence contributes directly to his injury no recovery can be had therefor.

3. ———: ———: CONTRIBUTORY NEGLIGENCE: CASE STATED. Deceased was a bright boy ten years old, and in the light of the broad day went upon a railroad track at a place not used for a crossing, and walked in front of a train which was in full view for 500 feet before it struck him. He knew all about the danger of being upon and

about the railroad track, for he had been warned of it on several occasions by his father, and previously on the same day had been flogged by his father for going on the track. He heeded not the warning, but recklessly went upon the track in front of a near approaching train without looking or listening. *Held,* that he was guilty of such contributory negligence as barred a recovery, although the train's bell may not have been rung.

Appeal from St. Louis City Circuit Court.—*Hon. Jacob Klein,* Judge.

AFFIRMED.

*Taylor R. Young, Maurice L. Altheimer* and *Wm. H. Reynolds* for appellants.

(1) The trial court abused its discretion in refusing appellants a new trial on the ground of newly-discovered evidence. The newly-discovered evidence goes to the merits of the case; it is not merely cumulative, corroborative, or collateral; appellants were not guilty of laches in failing to produce this testimony at the trial; the utmost diligence was used to secure all facts relative to the injury; its object is not to impeach the credibility of the witnesses, and it is of such a character as ought to be decisive at another trial, of an opposite result on the merits. State v. Bailey, 94 Mo. 311; Howland v. Reeves, 25 Mo. App. 464; State v. Wheeler, 94 Mo. 252; State v. Murray, 91 Mo. 95; Longdon v. Kelly, 51 Mo. App. 576; Trimble v. Tautinger, 104 Iowa 665; Schoenlan v. Friese, 14 Mo. App. 436. (2) Defendant's failure to cause the bell on the engine to be constantly sounded while moving within the limits of the city, was, under the decisions of this court upholding section 1239, Revised Ordinances 1887, negligence *per se.* Hanlon v. Railroad, 104 Mo. 381; Merz v. Railroad, 14 Mo. App. 459. . The jury may well have inferred

that this negligence on the part of defendant was the proximate cause of the injuries complained of. Bluedorn v. Railroad, 121 Mo. 268. One exercising ordinary care in crossing a railroad track in the limits of a populous city, and who is injured by a train of cars because of the failure of a railroad company to ring the bell as required by ordinance, is entitled to recover. Murray v. Railroad, 101 Mo. 236. (3) Instruction "B" is in conflict with and contradicts instructions 3 and 6 given at plaintiffs' request. Price v. Railroad, 77 Mo. 508. The instruction imposed upon the deceased, a child of tender years, the same degree of care, presence of mind, prudence, forethought and judgment as that required by an adult. This is not the law, never was the law anywhere, and we feel sure ought not and never will be declared the law by this court. Payne v. Railroad, 129 Mo. 416; Spillane v. Railroad, 111 Mo. 555, 135 Mo. 426; Wright v. Detroit, 77 Michigan 230; McGuire v. Chicago, 37 Federal Rep. 54; McGinness v. Butler (Mass.), 34 N. E. Rep. 259; Mowery v. Railroad, 51 N. Y. 666; Huerzeler v. Railroad, 139 N. Y. 490; Traction Co. v. Scott, 33 L. R. A. 125; Bank v. Cook, 29 L. R. A. 761; Pekin v. McMahon, 27 L. R. A. 210.

*Martin L. Clardy* and *Henry G. Herbel* for respondent.

(1) One of the six requisites prescribed by this court (27 Mo. 112) for justifying a new trial on the ground of newly-discovered evidence is that the trial court must believe that the newly-discovered evidence "would probably produce a different result if the new trial was granted." In determining this fact many elements and incidents of the trial, which in the very nature of things are incapable of transmission to an appellate tribunal, must be taken into consideration. Howland v. Reeves, 25 Mo. App. 467. An analysis of the newly-

discovered evidence will disclose the fact that it was physically impossible for Hanson to have seen what he says he did from the place at which he was standing. In the following cases this court held, as we think it should in this, that the improbability alone of the alleged newly-discovered evidence justified the trial court's action in overruling the motion for a new trial: Schoenlan v. Friese, 14 Mo. App. 437; State v. Ray, 53 Mo. 439; Cook v. Railroad, 56 Mo. 384; State v. Stewart, 127 Mo. 290; State v. Sansone, 116 Mo. 1; State v. Woodward, 95 Mo. 131; Culbertson v. Hill, 87 Mo. 556. (2) The undisputed evidence of at least two of plaintiff's witnesses (for defendant offered no testimony) was that the engine by which the boy was struck gave the customary passing signals to the west-bound freight train, a short distance west of the place at which the boy was struck, and if he did not heed them he certainly would not have heeded the bell. The bell would have appealed only to his sense of hearing, and as he was bound under the law to both look and listen, defendant's failure to ring the bell would not have absolved him from his duty of keeping a constant lookout for trains. As the evidence conclusively showed that he had an unobstructed view of the approaching train for at least five hundred feet, and some of the witnesses said fifteen hundred feet, it follows that his neglect was the proximate cause of his death. Holwerson v. Railroad, 57 S. W. 774. (3) Moreover, under the rulings of this court plaintiffs would not be entitled to recover for defendant's neglect to observe an ordinance regulation, as it is held that a civil liability can not be created by ordinance in the absence of a contract, hence, the instruction was harmless. Sanders v. Railroad, 147 Mo. 411; Byington v. Railroad, 147 Mo. 673; Murphy v. Railroad, 153 Mo. 252; Fath v. Railroad, 105 Mo. 337; Senn v. Railroad, 108 Mo. 142; Holwerson v. Railroad, 57 S. W. 770. (4) When the instructions,

taken as a whole, fairly declare the law of the case, the fact that every instruction is not complete in itself will not invalidate them. Doyle v. Trust Co., 140 Mo. 21; Hughes v. Railroad, 127 Mo. 453; Watson v. Railroad, 133 Mo. 248. (5) The boy was guilty of such contributory negligence as ought to bar this action as a matter of law. Graney v. Railroad, 57 S. W. 276; McDermott v. Railroad, 20 S. W. 380; Spillane v. Railroad, 135 Mo. 414; Payne v. Railroad, 136 Mo. 652.

BURGESS, J.—This is an action by plaintiffs, father and mother of Albert B. C. Schmitt, deceased, to recover of defendant company five thousand dollars damages for the death of their son, by reason of the alleged negligence of defendant in failing to discover the boy on its track in time to have avoided the injury; the failure to ring the bell upon the engine, as required by the ordinance of the city of St. Louis, where the accident occurred, and by reason of having defective brakes on its train. No proof was offered upon the last ground of negligence alleged with respect to defective brakes, and it was therefore eliminated from the case.

Upon a trial before the court and a jury, there was a verdict for defendant. In due time plaintiffs filed their motion for a new trial, on the ground of newly-discovered evidence, and the giving of erroneous instructions at the instance of defendant, which being overruled they bring the case to this court by appeal for review.

The facts are substantially as follows:

Between three and four o'clock in the afternoon of August 6, 1897, plaintiff's son who was then ten years and one month old, while walking along upon defendant's southernmost or eastbound of three parallel tracks in the city of St. Louis, was struck, run over and instantly killed by one of defendant's

passenger trains which passed that point daily at about that hour. The accident occurred about midway between Tower Grove avenue and King's highway, on defendant's private way, where there was no street crossing said tracks, and where a person standing on the east-bound track at the point where the boy was killed, could see a dog crossing the track at King's highway, which was about fifteen hundred feet distant. Of the three tracks at this point two are what are called main tracks, and the other a switch track; the one upon which the boy was killed is used for east-bound trains, the middle track for west-bound, and the northernmost for a switch track. The defendant had erected sign boards at Tower Grove avenue, warning everybody not to trespass on the tracks. Race Course avenue adjoins defendant's right of way on the north and parallels the tracks. The boy lived a block north of the point at which he was killed, had lived there for ten years prior to his death, had on several occasions been forbidden by his father from walking and playing on the railroad tracks and cautioned by him of the danger in so doing, and had been punished by him on the morning of his death, for loitering about said tracks. Deceased was a bright boy of his age, and had been attending school for about four years.

At the time of the accident the Hill-O'Meara Construction Company was constructing a sewer on the south side of defendant's right of way parallel with defendant's tracks, the northern line of which was about fifteen feet south of defendant's southernmost or east-bound track, the intervening space being occupied by the earth thrown out of the trench, which formed a ridge from six to ten feet high, that extended along the south side of the track on which the boy was killed one hundred feet or more. At the western end of the ridge a portable engine, inclosed with boards (referred to in the evidence as the "engine house"), was situated. Shortly before

the accident the boy was seen about a team hitched to a wagon from which was being unloaded material for the sewer a little southwest of the engine house. He was called by the engineer of the Hill-O'Meara Construction Company, who was standing at a water barrel on the south side of the engine house rinsing a tin bucket, and upon going to him was seen to take the bucket and start around the west side of the engine house toward defendant's track, which was only a few feet distant, on a path leading thereto. Shortly after he disappeared behind the engine house, a passenger train consisting of an engine and two cars came along, and as there was a west-bound freight train passing that point on the track next north of the track on which the boy was killed, the usual passing signal (two short blasts of the whistle) were given by the passenger train a short distance west of the engine house. Just an instant before the boy was struck he was seen walking along east about the center of the southern or east-bound track by Edward Joyce, another boy who was standing about eighty feet north of the tracks with his dogs, awaiting the passage of the freight train on the west-bound track; as the freight train going west was between him and the boy, who was walking east on the next track south, he could only see about one-half of the boy's body by looking through under the freight cars. He only took two steps from the time Joyce first saw him until he was struck and killed by the east-bound passenger train, which did not stop but went on. The Joyce boy gave the alarm and ran to the boy, who was identified as plaintiff's son.

There was evidence that the engine bell was not ringing at the time of the accident, but the evidence conclusively showed that the view of the track westwardly was unobstructed for at least five hundred feet. The boy's father testified that a dog could be seen crossing King's highway from the point of the accident, a distance of fifteen hundred feet.

The defendant offered no evidence.

Vol 160 mo—4

In behalf of plaintiffs the court instructed the jury as follows:

"1.   The court instructs the jury that it was the duty of the defendant's servants in charge of said east-bound engine and train of cars, while running or moving within the limits of the city of St. Louis, to cause the bell on the engine thereof to be constantly sounded; and if you believe from the evidence that the bell on the engine of the train in question was not constantly sounded while said train was running or moving within said limits, then you should find that the defendant was guilty of negligence in that respect.

"2.   The court instructs the jury that it was the duty of the defendant's servants in the running and handling of said east-bound engine and train of cars, to have exercised that degree of care and prudence which an ordinarily careful and prudent person, engaged in like business, would have exercised under like circumstances; and a failure to exercise such a degree of care and prudence would render the defendant guilty of negligence in that respect.

"3.   And, on the other hand, it was the duty of Albert B. C. Schmitt, in attempting to cross or walk upon defendant's track, to have exercised that degree of care and prudence that an ordinarily careful and prudent person of his age and intelligence, under like circumstances, would have exercised; and a failure to exercise such a degree of care and prudence would render him guilty of negligence.

"4.   The court instructs the jury that it was the duty of the plaintiffs in the care and custody of their son to have exercised such degree of care and prudence in keeping him off defendant's railroad track and out of danger, as was reasonable and prudent under like circumstances, as shown by the evidence; and a failure to exercise such a degree of care and prudence would render plaintiffs guilty of negligence.

"5.   The court instructs the jury that in determining the question as to whether the defendant's servants and employees were guilty of negligence in the present case, the jury are authorized to and should take into consideration the place at which the accident occurred; the manner in which the train was being propelled; the number of dwelling houses in that vicinity; their distance from the track; and the probability of pedestrians being on the track at that time and place, if any. What would be ordinary care and prudence in running a train of cars in a sparsely populated locality might be negligence in a more populous district, and it is for the jury to determine, in view of all the facts and circumstances of the case, whether defendant's servants did exercise ordinary care and prudence in the management of said train at the time and place mentioned in the evidence in this case.

"6.   If, therefore, the jury believe from the evidence that Albert B. C. Schmitt, on the 6th day of August, 1897, was the unmarried son of plaintiffs, and that on said day he was walking eastwardly on defendant's railroad track between Newstead and Taylor avenues, in the city of St. Louis, and that while so walking he was run over and killed by defendant's east-bound engine and train of cars in charge of defendant's servants, then your verdict should be for the plaintiffs, provided you further believe from the evidence that the injury complained of occurred while plaintiffs were exercising that degree of care as to the care and custody of their son as that term is explained in instruction numbered 4, and while the said Albert B. C. Schmitt was himself exercising that degree of care and prudence for his own safety that an ordinarily careful and prudent person, of his age and intelligence, under like circumstances, would have exercised, and, provided, that you further believe from the evidence that the injury was caused by the negligence of the defendant's servants, as the

term negligence is explained in either the first or second of the foregoing instructions.

"7.   Even though the jury should find that Albert B. C. Schmitt was negligent in attempting to cross or walk upon defendant's railroad track, and that the plaintiffs were also guilty of negligence in the custody and care of their said son, and even though you believe from the evidence that the negligence of either the plaintiffs or their said son, Albert B. C. Schmitt, directly contributed to cause the injuries complained of; still, if you further believe from the evidence that Albert B. C. Schmitt had placed himself in a dangerous position by going on defendant's railroad track, and thereafter such dangerous position became known, or in the exercise of ordinary care and diligence, could have become known to defendant's servants in charge of said train in question, in time to have stopped said train, by the exercise of ordinary care, and avoided the injury complained of, and failed to do so, then your verdict should be for the plaintiffs.

"8.   The court instructs the jury that if you find for the plaintiffs you will assess their damages in the sum of five thousand dollars.

"If you find in favor of defendant, you need merely state in your verdict that you find the issues joined in this case in favor of the defendant."

Over the objection and exception of plaintiffs the court instructed the jury in behalf of defendant as follows:

"The court instructs the jury that the plaintiffs claim that the death of Albert B. C. Schmitt, their minor son, was occasioned by the following negligence on the part of the defendant company, that is to say:

"1.   That the defendant's servants and agents in the charge of the engine and train of cars which struck the deceased saw, or in the exercise of reasonable care and diligence

in keeping a lookout for persons on the track, could have seen him in time to have stopped the train and avoided striking him.

"2. That defendant's servants and agents in charge of the engine and train failed to ring the bell, as required by ordinance of the city of St. Louis, which provides that all cars and locomotives propelled by steam power, when moving in said city, shall keep the bell constantly ringing.

"3. That the defendant permitted its brakes for the stopping of said engine and train of cars to become defective, out of order and repair, by reason of which, said engine and train of cars could not be stopped in time to avoid collision with plaintiffs' son. There is no evidence before you to support this specification of negligence.

"These allegations the defendant has denied in its answer. The defendant has also alleged, by way of affirmative defense, that whatever injuries plaintiffs' said son sustained by its train were caused in whole and in part by his own contributory negligence. With reference to the charges by the plaintiffs, as their ground of action, the jury is instructed that facts supporting them must be proved, and it must further appear that they were the cause of the injuries and death of plaintiff's son.

"With respect to the issue of contributory negligence of the deceased son of plaintiffs the jury are charged that the burden of proving such negligence rests upon the defendant. From this, however, it must not be inferred that it devolves upon the defendant to introduce upon its part independent witnesses to give testimony tending to show such facts, if they exist, but the defendant may rely upon the facts and necessary inferences from the facts elicited from plaintiffs' witnesses, as well as its own.

"B. The court instructs the jury that if they believe from the evidence, that the deceased saw the engine approaching, or knew of its approach, before he got upon the track, or

could have seen such engine by looking, or could have heard it approaching by listening, then the failure of defendant's servants to ring the bell of the engine, if a fact, is immaterial and plaintiff is not entitled to recover on that ground of negligence.

"The court further instructs the jury, that plaintiffs ought not to recover in this case, unless they find from the evidence that the servants and agents of defendant in charge of the engine saw, or, by the exercise of ordinary care and diligence, might have seen deceased on defendant's track in time to have stopped the train and thus averted the injury.

"The jury are also instructed that, if after deceased entered upon the railroad track, the employees in charge of the train which struck him did not have time, by the exercise of ordinary diligence, to stop the train, then no negligence can be imputed to defendant company because they did not do so, and the verdict should be for the defendant.

"E. The jury are further instructed that while it may have been the duty of defendant's servants or agents to make all reasonable efforts to stop the train and avoid a collision, yet a duty also devolved upon the deceased, and if, after he saw the train coming or might by looking or listening have seen or heard it coming, he could have gotten out of its way, or kept out of its way, but did not, then the plaintiffs can not recover unless you should further find, from the evidence, that after the deceased was in a position of peril the defendant's servants in charge of said train either saw him or by the exercise of ordinary care might have seen him in time to have stopped the train by the exercise of ordinary care, before it struck him.

"Although the jury may believe from the evidence, that defendant's employees were guilty of negligence in failing to discover the presence of plaintiffs' son, Albert B. C. Schmitt, on the track; yet, if they also believe from the evidence, that said Albert B. C. Schmitt was negligent in failing to discover

the approach of defendant's train in time to have kept out of its way, or to have gotten out of its way if in it, then your verdict will be for the defendant, unless you should further find from the evidence that after the deceased was in a position of peril the defendant's servants in charge of said train either saw him, or by the exercise of ordinary care might have seen him in time to have stopped the train by the exercise of ordinary care, before it struck him.

"The court instructs the jury, that if they believe from the evidence, that the death of plaintiffs' son, Albert B. C. Schmitt, was the result of mere accident or casualty, and not of negligence on the part of the defendant, your verdict will be for the defendant."

The first question for consideration presented by this appeal is with respect to the action of the court in overruling plaintiffs' motion for a new trial upon the ground of newly-discovered evidence.

In order to justify a trial court in granting a new trial upon the ground of newly-discovered evidence, one of the essentials is, that it is so material that it would probably produce a different result if the new trial be granted (State v. Ray, 53 Mo. 345; Folding Bed Co. v. Railroad, 148 Mo. 478; Culbertson v. Hill, 87 Mo. 553); with respect to which, the trial court was in a much better situation to judge than we are. Much, therefore, must be conceded to the discretion of the court in its ruling in regard to the matter, and unless it be made to clearly appear that such discretion was unwisely exercised, this court will not interfere.

In support of the motion the plaintiff read in evidence the affidavit of one Hanson, from which it appears that he was standing about ten or fifteen feet from the passing freight train, which was between him and the boy at the time he was killed. The evidence shows that the east and west-bound

tracks were ten feet apart, and that the boy was walking in the middle of the east-bound track, which would place him twelve and one-half feet south of the moving freight train, and it is inconceivable how he could have seen the boy under these conditions, unless he had stopped and looked under the cars, and this he does not pretend to have done.

The evidence adduced by defendant on the question, showed almost conclusively that Hanson was not near the place where the boy was killed at the time of the accident. Moreover, it was shown that Hanson was a near neighbor to plaintiffs, living in the same block and that the deceased boy was a playmate of Hanson's son, whom he took to plaintiffs' house to view the dead boy's remains, and never at any time intimated to plaintiffs that he knew anything about the accident until after the trial, and not then until he met the father of the boy in a saloon and heard him telling some persons present that he lost his case because he could not prove the whereabouts of his son from the time he left the house until a witness by the name of Joyce saw him, when he volunteered to tell the father of the boy what he knew about where the boy was at the time indicated.

The statements in the affidavit of this witness seem to us to be incredible, and it is utterly impossible to see how plaintiff could have expected the court to place any credence in them.

The only objections to the instructions given in behalf of defendant, are to the paragraphs of instruction numbered three, marked B and E, which are criticised upon the grounds that they are in conflict with plaintiffs' third and sixth instructions, in that the one tells the jury that if they believe from the evidence that the deceased was as careful under the circumstances as they thought any other child of the age and intelligence of deceased would have been, then the latter was negligent; while paragraph marked E tells the jury that if de-

ceased failed to look and listen and by so doing could have gotten out of the way of the train or kept out of its way, he was negligent.

The argument is that the jury may have believed that the deceased did exercise all the care required by plaintiffs' instructions three and six, and found as they evidently did, that upon the theory that under the circumstances of the case, any one could by looking out and listening discover a train in time to get out of its way, the deceased did not look and listen, and was therefore guilty of such contributory negligence as to prevent a recovery. But instruction number three must be considered as a whole, and when this is done it does not seem to us that there is any conflict in it. It simply presented the defendant's defense, and although defendant may have been guilty of negligence in failing to ring the bell, yet if deceased was guilty of negligence contributing to his injury, plaintiff could not recover.

While it is well settled that moving a railroad train in a city in violation of its ordinances requiring the bell upon its engine to be continuously rung, is negligence in itself (Karle v. Railroad, 55 Mo. 477; Murray v. Railroad, 101 Mo. 236; Hanlon v. Railroad, 104 Mo. 381) "such negligence alone will warrant a recovery when it appears that obedience to the requirements of the ordinance would have prevented the injury, but not otherwise." [Hanlon v. Railroad, *supra;* Karle v. Railroad, 55 Mo. 482; Zimmerman v. Railroad, 71 Mo. 476; Barkley v. Railroad, 96 Mo. 367; Hudson v. Railroad, 101 Mo. 13; Henry v. Railroad, 76 Mo. 293.] That this was the view taken by the court clearly appears from plaintiffs' first instruction, by which the jury were told that if they believed from the evidence that the bell on the engine of the train that ran over deceased and killed him was not constantly sounded while said train was running or moving within the city limits,

they would find the defendant guilty of negligence in that respect.

That a person who walks upon a railroad track without looking and listening for approaching trains is guilty of negligence, is well-settled law, and if such negligence contributes directly to his injury no recovery can be had therefor.

Deceased was a sprightly boy ten years and one month of age at the time of his death, the train that ran over and killed him was in full view for five hundred feet before it struck him, it was in the light of the broad day, and he knew all about the danger of being upon and about the railroad tracks for he had been warned of it on several occasions by his father. Yet he heeded not the warning, but recklessly went upon the track, in front of a near-approaching train evidently without looking and listening and was killed, and must be held to have contributed directly to his own death. [Spillane v. Railway, 135 Mo. 414.]

The question as to the negligence of defendant in failing to ring the bell, and of deceased in going upon the track in front of the approaching train without looking and listening as he must have done, and the care and prudence required of him commensurate with the intelligence, capacity and experience he was shown to possess, as well also as all other issues involved in the case, were very fully and fairly submitted to the jury.

And while they must have found that defendant's servants in charge of the train were guilty of negligence in failing to ring the bell as required by the ordinance, it is clear from the evidence that the failure to do so in no way contributed to the death of plaintiffs' son, but that he contributed directly to his own death by going upon the track without looking or listening, and this was the logical result of their verdict.

Our conclusion, therefore, is, that the judgment should be affirmed, and it is so ordered. *Sherwood, P. J.,* and *Gantt, J.,* concur.