HANLON v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

DIVISION TWO.

1. **Negligence:** RAILROAD : RINGING BELL : ORDINANCE. The failure to ring a bell on a moving railroad engine as required by a city ordinance constitutes negligence.

2. ———: ———: ——— : ———. Such negligence alone will warrant a recovery when it appears that obedience to the requirements of the ordinance would have prevented the injury sued for, but not otherwise.

Hanlon v. The Mo. Pac. Ry. Co.

104 381
81a 357
104 381
157 641
104 381
160 57
104 381
161 253
104 381
163 654
104 381
172 688
95a 6741
98a 7144
99a 1185
99a 2185

3. ———: RINGING BELL: QUESTION FOR JURY.   Whether or not the bell was being rung at the time of the accident is, where the evidence is conflicting, a question for the jury.

4. ———: PREVENTION OF INJURY: QUESTION FOR JURY.   Whether the injury might have been prevented had the bell been rung was also a question for the jury.

5. ———: HIGHWAY: RAILROAD AND TRAVELER.   A traveler and a railroad company when using a public highway in common must each look out for the presence of the other; one to avoid being injured and the other to avoid inflicting injury.

6. Railroad: TRAVELER: RECOVERY NOTWITHSTANDING CONTRIBUTORY NEGLIGENCE.   While such traveler riding on a wagon on the track is guilty of negligence in not looking back for a colliding train, still his negligence will not prevent recovery on his part if the servants of the company in charge of the train saw, or, by the use of proper care, might have seen, the peril to which the traveler was exposed, and thereafter could have avoided the injury and failed to do so..

7. Negligence: PLEADING: EVIDENCE.   The charge in the petition of negligent management of the train will authorize proof of negligence of the company after its employes saw the peril to which plaintiff was exposed.

8. ———: INJURY CAUSING DISEASE: QUESTION FOR JURY.   Where, in an action for personal injuries caused by the negligence of a railroad, the physician who examined plaintiff after the accident testified that he found evidence of compression of the chest and pneumonia arising from the compression which involved both lungs, and where it appears that the malady from which plaintiff suffered both before and at the trial was superinduced by the pneumonia arising from the injuries, such evidence was sufficient to authorize the finding of the jury that plaintiff's malady was caused by the injuries received in the accident.

9. ———: PERSONAL INJURIES: DAMAGES: VERDICT.   Where the evidence in such action tended to show that plaintiff was confined to his house three weeks after the accident, that both of his sides were compressed, that pneumonia resulted, that up to the time of the trial he was unable to work and suffered continual pain, and, also, that the injury might be permanent, a verdict of $5,000 will not be set aside by the supreme court as excessive.

10. ———: ———: ———: ———.   The question of the amount of the verdict is peculiarly one for the jury and the supreme court will not interfere with it on the ground of excessiveness, unless it clearly appears that such verdict was the result of improper motives or conduct on the part of the jury

Hanlon v. The Mo. Pac. Ry. Co.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*B. Pike* for appellant.

(1) Plaintiff's demurrer to the whole evidence should have been sustained. *Malti v. Railroad*, 32 Am. & Eng. R. R. Cases, 73; *Railroad v. Davis*, 32 Am. & Eng. R. R. Cases, 65; *Henze v. Railroad*, 71 Mo. 638; *Gurley v. Railroad*, 93 Mo. 450; *Rafferty v. Railroad*, 91 Mo. 37; *Harty v. Railroad*, 95 Mo. 368; *Field v. Railroad*, 76 Mo. 616; *Braxton v. Railroad*, 77 Mo. 458; *Collins v. Railroad*, 65 Mo. 230-32; *Waldheir v. Railroad*, 71 Mo. 514; Cooley on Torts, 679; Shear. & Red. on Neg., sec. 488. (2) The court committed error in refusing the instructions asked by the defendant, hypothetically submitting the contributory negligence of plaintiff and the driver of the wagon specifically to the jury. *Devitt v. Railroad*, 50 Mo., pp. 304-5; *Zimmerman v. Railroad*, 71 Mo. 490-1; *Yarnall v. Railroad*, 75 Mo. 583. (3) The court erred in giving the instructions asked by plaintiff. (See cases cited under second point.) (4) The verdict was grossly excessive and manifestly the result of prejudice and passion on the part of the jury. *Sawyer v. Railroad*, 37 Mo. 240, and cases therein cited.

*D. P. Dyer* for respondent.

(1) The position taken by the appellant, that the jury were legally bound to find that the bell on the engine of the appellant was being constantly rung, is without merit. *Murray v. Railroad*, 101 Mo. 236, 242. (2) But, if the position were correct, the appellant would be debarred from raising it by reason of the fact that his own instructions are predicated upon the contrary hypothesis. *Keen v. Schnedler*, 92 Mo. 516;

*Bank v. Armstrong,* 92 Mo. 265; *Reilly v. Railroad,* 94 Mo. 600, 611, and cases cited. (3) The facts of the case do not conclusively establish contributory negligence on the part of either the driver or of the plaintiff; they do not even establish *prima facie* proof of such negligence. But, if the driver had been negligent, the plaintiff would not have been affected thereby. *Beck v. Railroad,* 13 S. W. Rep. 1053, and cases cited; *Land Co. v. Mingea,* 89 Ala. 521, and cases cited; *Mills v. Armstrong,* L. R. 13 App. Cas. 1; *Borough v. Brisbane,* 113 Pa. St. 552, 553. (4) It was not necessary for the plaintiff to plead that defendant's engineer saw or by the exercise of reasonable care could have discovered the plaintiff's peril in time to have averted the injury. That matter could be shown to obviate contributory negligence on the part of the plaintiff without being pleaded, and the evidence was used only for that purpose. *Kellny v. Railroad,* 101 Mo. 75; *Hilz v. Railroad,* 101 Mo. 56. And, if it had been necessary to plead it, the defendant is not in a position to avail itself of any failure of the plaintiff to plead it. *Hilz v. Railroad,* 101 Mo. 41. And, finally, in case it had been necessary to plead such default on the part of the engineer, the allegations of the plaintiff's petition are sufficiently broad to have rendered the claim available. *Sullivan v. Railroad,* 97 Mo. 113. (5) The damages assessed by the jury are not excessive. *Griffith v. Railroad,* 98 Mo. 176; *Whalen v. Railroad,* 60 Mo. 323; *Drain v. Railroad,* 86 Mo. 574; *Ridenhour v. Railroad,* 13 S. W. Rep. 889.

MACFARLANE, J.—This is a suit for personal injuries sustained by plaintiff under the following circumstances:

Plaintiff was in the employ of John O'Brien, who was a manufacturer of boilers and sheet-iron goods in St. Louis. On December 13, 1887, plaintiff, with Murphy and Dickson, two other employes of O'Brien, were

sent with a smokestack about twenty feet long and three feet in diameter, from the factory on the corner of Main and Biddle streets to the depot of the Iron Mountain railroad.

The smokestack was loaded upon a wagon drawn by one mule; Murphy drove, Dickson rode on the front end of the wagon with the driver and plaintiff on the back end of the smokestack. Along the levee running north and south are located the tracks of the Iron Mountain railway, four in number. Poplar street runs east and west and intersects the levee. The next parallel street south of Poplar is Plum, the second, Cedar, and the third, Gratiot. The distance from Poplar to Gratiot street is about one thousand feet. Spruce street runs also east and west, and intersects the levee north of Poplar street. Poplar street extends west to the Union Depot and upon this street defendant company has a track connecting its road with that of the Iron Mountain and the elevators on the levee. The Iron Mountain depot or platform is east of the tracks on the levee. The mule and wagon were driven down Spruce street to the levee and had proceeded to within about twenty feet of the north line of Gratiot street, when an engine on one of the railroad tracks was observed meeting them from the south. The wagon was stopped, and the engine also stopped a short distance in front of the wagon.

At Gratiot street it was the intention of those in charge of the wagon to cross the tracks of the railroad, that being the most direct route to the point to which they were going. The wagon was kept standing either on or very near the west track, a few minutes, to see if the engine in front of it would get out of the way. The engine remaining stationary, the driver of the wagon concluded to change his route and turn up Gratiot street. The distance between the curbing on the corner of Gratiot street and the first rail of the railroad track to the east was five feet. The wagon had been standing on this space, with possibly one wheel over

the rail.    Owing to the projection of the smokestack to the rear of the wagon, the driver thought it necessary, in order to make the turn into Gratiot street, to pull first a little to the left, which brought the wagon over the first rail of the track.

Plaintiff, sitting on or in the rear end of the smokestack, had been giving his attention to the engine in front of him, as also had the two men in the front end of the wagon.    While standing, none of them had looked back north to ascertain whether engines or trains were approaching from that direction.    About the time the wagon passed over the rail, some one in front of the wagon called to plaintiff and the other two men on it to jump or they would be killed.    On looking back an engine drawing a train of twenty freight cars was discovered coming south on the first track, nearly upon the wagon.    Plaintiff jumped about the time the train collided with the wagon, from which he received the injuries for which he sues.    Plaintiff and his companions all testify that the bell on the engine that struck the wagon was not ringing.    The evidence tended to prove that, when the freight train turned from Poplar street onto the levee, the wagon was noticed by the engineer in charge, standing close by or upon the track ; that the train was running at the rate of three miles per hour and could have been stopped within the space of two hundred feet.    The engineer and fireman both testified that the bell on the engine was ringing continuously, from the time it started on Poplar street, until the collision.

The petition charged negligence in the manner in which the engine and cars were managed and moved. It also charged negligence in its failure to have a watchman stationed at the intersection of Gratiot street and the levee ; in its failure to display proper signals at the intersection of said streets ; in running said train at a greater rate of speed than six miles per hour ; and in its failure to ring the bell on its engine continuously,

all alleged to be in violation of the requirements of certain ordinances of the city. Defendant's answer was a general denial and a plea of contributory negligence. The reply denied contributory negligence.

I.   At the close of all the evidence defendant asked the court to instruct the jury that the evidence was not sufficient, under the pleadings, to authorize a verdict for plaintiff. This the court refused, and defendant now insists that it committed error in not doing so.

There was no evidence that the train which collided with the wagon was running at a rate of speed in excess of six miles per hour, nor that the collision occurred by reason of a failure to keep a watchman at the intersection of Gratiot street with the levee, and, therefore, the charges of negligence in regard to the speed of the train and the duty to keep a watchman and give signals at street intersections were not sustained, and are eliminated from the case. No instruction was asked, or given, on the hypothesis of negligence in these particulars, and we may assume that these charges were abandoned.

We are then only to determine whether there was evidence tending to prove the remaining charges, and if so whether there was such concurring negligence on the part of plaintiff as would defeat his recovery notwithstanding the negligence of defendant.

The ordinance required the bell, on a moving engine, to be rung continuously, and it is well settled that a failure to observe such reasonable and wholesome requirements constitutes negligence in itself. *Karle v. Railroad*, 55 Mo. 477; *Murray v. Railroad*, 101 Mo. 236. Such negligence alone will warrant a recovery when it appears that obedience to the requirements of the ordinance would have prevented the injury, but not otherwise. *Karle v. Railroad*, 55 Mo. 482; *Zimmerman v. Railroad*, 71 Mo. 476; *Barkley v. Railroad*, 96 Mo. 367; *Hudson v. Railroad*, 101 Mo. 18; *Henry v. Railroad*, 76 Mo. 293.

Two or three witnesses who were in a situation to hear, and who were in a position that should have caused them to listen, testified either that no bell was rung, or that they heard none ring. On the other hand two or three witnesses, who should have known, testified positively that the bell was kept ringing continually. While the testimony of these witnesses, testifying positively to the fact of which their situation at the time gave them positive knowledge, entitles their testimony to greater weight, in the absence of discrediting circumstances, than those testifying negatively to the same fact, still the circumstances surrounding the collision, the situation of the witnesses, the remoteness in time of the occurrence, and the credibility of the witnesses, were all to be taken into account to determine the fact whether or not the bell was rung. Under such conflict in the evidence, the court could not pronounce upon its conclusiveness, or weight even, as a matter of law. We must, therefore, conclude that there was evidence that the bell was not rung as required by the ordinance. *Murray v. Railroad*, 101 Mo. 236.

Neither can it be said as a matter of law, that the injury might not have been prevented had the signals been given.

It is insisted that, although the signals were not given, and if they had been given the injury might have been averted, still the negligence of plaintiff himself, in not observing the common prudence of looking out for his own safety, concurred with that of defendant, and the injury resulted on account of the concurring negligence of both, and for that reason debarred plaintiff from recovery. It is well settled by authority, as well as enjoined by the common dictates of prudence, that one, going upon the track of a railroad, should observe all such precautions for his own safety, as reason and prudence dictate, and, if disaster comes upon him by reason of a failure to do so, he must bear the consequences. *Yancey v. Railroad*, 93 Mo. 436 ; *Harlan v. Railroad*,

64 Mo. 480; *Lenix v. Railroad*, 76 Mo. 86; *Moody v. Railroad*, 68 Mo. 470.

This rule has, however, a qualification which is founded upon principles of humanity and is universally recognized. This qualification enjoins upon the railroad company the duty of using all reasonable efforts to avoid injury to one who has negligently placed himself in a position of danger, if the peril is known, or, under certain circumstances, by reasonable care might have been known. A failure to observe this requirement renders the company liable notwithstanding the previous negligence of the person injured. *Rine v. Railroad*, 88 Mo. 396; *Maher v. Railroad*, 64 Mo. 267; *Bergman v. Railroad*, 88 Mo. 678; *Kellny v. Railroad*, 101 Mo. 67.

The rule, and the qualification of it, require precautions to be observed by both the railroad company and the traveler, when using a public highway in common. The precautions to be used by each must necessarily vary, with varying circumstances, and no positive rule can be laid down which can be made a test in every case. One rule for their mutual government is imperative, which is the duty and obligation for each to watch for the presence of the other, one to avoid being injured, the other to avoid causing injury. The railroad company must give some regard to the known imprudence of mankind and not content itself with the mere obedience to the law requiring signals to be given, and the traveler must, in like manner, take precautions for his own safety, and not depend entirely upon the railroad company to protect him, or give him timely notice of danger. *Kimes v. Railroad*, 85 Mo. 611; *Stoneman v. Railroad*, 58 Mo. 503; *Wilkins v. Railroad*, 101 Mo. 93.

Plaintiff was in a situation upon the wagon, from which he could, by the single effort of turning his head, and using his eyes, have seen the approaching train, from the time it came into the street in which the

wagon was standing, a distance of a thousand feet. He saw railroad tracks upon, or by the side of, which the wagon was standing. These themselves were a "notice and warning of danger." *Matta v. Railroad*, 69 Mich. 109.

At the rate the train was moving it would have taken it three or four minutes to move from Poplar street to the point of collision, during all which time it was in plain view. It does not appear that plaintiff turned his head in that direction at all during that time. There can be no doubt, we think, that plaintiff was negligent under the circumstances in failing to see the approach of the train. The court should have directed a verdict for defendant unless the facts bring the case within the qualification above mentioned. Did they do so?

The evidence shows that the levee, upon which the injury occurred, was a public street upon which both plaintiff and defendant's trains had mutual rights.

It is the duty of anyone using dangerous instrumentalities to observe watchfulness to avoid injuring persons where they have a right to be, and where they may reasonably be expected. The degree of watchfulness to which they should be held is proportionate to the injuries they may possibly produce. The degree of vigilance required of those in charge of an engine and train, in places used in common with them by the public, should be of the highest character. This wagon could have been seen by the engineer in charge of the train, for near a thousand feet up the track which was entirely open and free of obstruction. In fact, the engineer testified that he did see it from the time he first turned onto the levee from Poplar street. He saw the wagon standing still either upon or so near the track that unless moved a collision was inevitable, which must have been an unusual occurrence. He must have seen the long smokestack extending to the rear. He must have seen plaintiff and the other occupants of

the wagon giving no heed to his approach. He testified himself that the train was only running three miles per hour, and that it could have been stopped in a distance of two hundred feet. If those in charge of the train saw, or by the use of proper care might have seen, the peril to which plaintiff was exposing himself, and thereafter could have avoided the injury and failed to do so, the facts would bring the case under the qualifications of the rule, and plaintiff could recover, notwithstanding his contributory negligence. The court then properly overruled the demurrer to the whole evidence.

II. Defendant asked two instructions directing the jury to find for defendant in case they found that plaintiff was negligent in failing to look out for the train. These instructions the court properly refused for the reason that they wholly ignored the qualification of the rule hereinbefore discussed. They directed a verdict for defendant if the negligence of plaintiff concurred in producing the damage regardless of the subsequent negligence of defendant, which was more than defendant had a right to ask. Defendant asked no other instructions on contributory negligence, and cannot complain that none were given.

The pleadings, we think, authorized the evidence introduced for the purpose of proving negligence of defendant after its employes saw the peril to which plaintiff had exposed himself. The charge of negligent management of the train was sufficient for that purpose. *Kellny v. Railroad*, 101 Mo. 75; *Hilz v. Railroad*, 101 Mo. 56.

III. Defendant insists that there was no sufficient evidence before the jury to justify them in concluding that the disease from which plaintiff claims to have suffered was in consequence of the injuries received by him from the accident. We do not think the contention well founded. The doctor who examined plaintiff after his injuries testified that, on his examination, he found evidence of compression of the chest, and pneumonia

arising from that compression, which involved both lungs. The disease from which he suffered, and at the trial still suffered, was superinduced by the pneumonia caused by his injuries. At least the evidence of the fact was sufficient to go to the jury.

IV. It is also insisted that the verdict for $5,000 is excessive and was manifestly the result of prejudice and passion on the part of the jury. It must be admitted that the verdict does appear large, considering the extent of the injuries received as appears from the evidence, but it does not appear so grossly excessive as to indicate prejudice, passion or corruption on the part of the jury. The evidence tends to show that plaintiff was confined to his house three weeks; that both sides were compressed; that pneumonia resulted; that up to the time of the trial he had not been able to work and suffered continual pain. There was also evidence tending to prove that the injury might be permanent. The question of the amount of the verdict was peculiarly for the jury, and this court ought not to interfere unless it clearly appears that the verdict was the result of improper motives or conduct on the part of the jury. *Griffith v. Railroad*, 98 Mo. 176; *Drain v. Railroad*, 86 Mo. 574.

V. No serious objections are made to the two instructions given on behalf of plaintiff, other than that there was no evidence that defendant's engineer saw, or might have seen, plaintiff's danger in time to have avoided injuring him. This question has received our consideration under another point.

The testimony of the engineer himself was sufficient to justify the court in submitting the question to the jury. The instruction authorized a recovery though plaintiff and the driver were negligent in not seeing the approaching train, if their dangerous situation was discovered, or by reasonable diligence might have been discovered, by the engineer, in time to have prevented the accident. This instruction submits the question fairly to the jury.

Judgment affirmed; all concur.