# RAPP v. ST. LOUIS TRANSIT COMPANY, Appellant.

### In Banc, June 28, 1905.

1. **NEGLIGENCE: Action at Common Law and Under Vigilant Watch Ordinance: Election.** Where the petition charges common law negligence and a violation of the Vigilant Watch Ordinance as the cause of the personal injuries, it is not error to refuse to require the plaintiff to elect on which charge he will stand. The petition does not combine in one count a cause of action *ex contractu* with a cause of action *ex delicto*. (Following Sluder v. Transit Company, 189 Mo. 107.)

2. ————: ————: **Evidence.** Nor was it error under such petition to admit in evidence the Vigilant Watch Ordinance, which was that motormen in charge of street cars should keep a vigilant watch for vehicles and persons on or approaching the track, and on the first appearance of danger to either, stop the car in the shortest time and space possible.

3. ————: **Wagon on Track: Looking For Car.** Plaintiff's wagon wheel fell into a hole near the track, and stalled, and in order to get it out it was necessary for him to swing the horses around on the track. As he did this he saw no car coming, and thereafter he was busily engaged in trying to extricate the wagon, looking at the horses and wagon until it was struck by a car. The view of the motorman was unobstructed, and he saw the wagon a block away, but did not try to stop. *Held,* that plaintiff cannot be charged with negligence because while trying to extricate his wagon he did not keep a continuous watch for the car, and jump when he saw it was about to strike the wagon, but had a right to expect that he would not be run down by the car, and the court did not err in refusing to give a demurrer to the evidence.

4. ————: ————: **Contributory Evidence: Wantonness.** Even though the driver may be guilty of negligence in being on the track with his team and wagon, a motorman, who sees him there two or three hundred feet away and, without attempting to stop the car, runs it against the wagon or team, shows such a reckless disregard of human life as authorizes a recovery of damages against the company.

5. ————: ————: ————: **Looking.** A traveler on a street railway track is not required, at all times, to keep a continuous watch for an approaching car at the peril of life or limb; he has

the right to assume that those in charge of cars will, so far as they can by the exercise of ordinary care, refrain from injuring him, and that, if they discover him in a dangerous place on or near the track, they will use ordinary care to avoid running over him.

6. ———: ———: ———: **Duty of Company.** It is the duty of those in charge of street railway cars to use ordinary care to avoid injuring persons on the tracks, whether they are negligently there are not; and for a failure to observe that duty, that is, to stop the car after discovering them thereon, if by the exercise of ordinary care after such discovery it can be stopped in time to avoid the injury, the company is liable.

7. ———: **Excessive Verdict: $6,000.** Plaintiff, a driver of a wagon, twenty-four years old, was rendered unconscious by the striking of his wagon by the defendant's car, and one of his feet was mashed and crushed. From the injury to the foot he suffered great pain, blood poisoning set in, the tissues sloughed off, the big toe was amputated, he was confined to his bed five months, afterwards used crutches for six months, and will always be more or less a cripple. *Held*, that a verdict for $6,000, though liberal, is not excessive.

Appeal from St. Charles Circuit Court.—*Hon. E. M. Hughes*, Judge.

AFFIRMED.

*Boyle, Priest & Lehmann* and *Geo. W. Easley* for appellant.

(1) The motions to elect should have been sustained. The petition blends causes of action arising *ex delicto* with causes of action arising *ex contractu*. The Vigilant Watch Ordinance could only be passed under the power of the city to contract. City charter, art. 10, secs. 1, 2. It could not be passed under its power to legislate. City charter, art. 3, sec. 26; Fath v. Railroad, 39 Mo. App. 452; Fath v. Railroad, 105 Mo. 537; Senn v. Railroad, 106 Mo. 152; Moran v. Car Co., 134 Mo. 641; Byington v. Railroad, 147 Mo. 673; Mur-

phy v. Railroad, 153 Mo. 253; Saunders v. Railroad, 153 Mo. 253; Holwerson v. Railroad, 157 Mo. 245; Anderson v. Railroad, 161 Mo. 411; Nellis on St. Rys. 306, sec. 10. The cases of Jackson v. Railroad, 157 Mo. 621, and Weller v. Railroad, 164 Mo. 180 (s. c. 120 Mo. 655), were cases under a speed ordinance and cannot be decisive of the principle here involved, and cannot be held to overrule the long line of cases specially decided on the Vigilant Watch Ordinance. A rule established and followed for a long series of years cannot be fairly overruled by inference or construction from rulings on questions involving entirely different propositions. There is a very broad distinction in the exercise of these two powers. One is public and general, the exercise of sovereignty; the other, private and proprietary. One legislative, the other contractual. State ex rel. v. St. Louis, 145 Mo. 572; Illinois Trust Co. v. Arkansas City, 76 Fed. 282; Pike's Peak Powder Co. v. Colorado Spring, 105 Fed. 1; Seltzenger v. Tamaqua, 187 Pa. St. 539; Schaub v. Lancaster City, 156 Pa. St. 362; Weston v. Syracuse, 158 N. Y. 274, 43 L. R. A. 678. If these positions are correct, then the plaintiff has joined in the same count a cause of action arising out of contract with two causes of action arising out of tort for common law negligence. The common law distinctions between actions *ex contractu* and *ex delicto* are in substance retained by our code. Summer v. Rogers, 90 Mo. 329. The rule in this State is that such actions cannot be blended in the same count. Kendrick v. Railroad, 81 Mo. 521; Harris v. Railroad, 51 Mo. App. 128; Linnville v. Harrison, 30 Mo. 228; Jamison v. Copher, 35 Mo. 351; Ederlin v. Judge, 36 Mo. 483; Southworth Co. v. Lamb, 82 Mo. 242. (2) The demurrer to the plaintiff's evidence should have been sustained. The whole of the plaintiff's case is that his wagon was stalled by the side of the track, but sufficiently removed therefrom to permit the car to pass without danger of collision. The plaintiff, well know-

Rapp v. Transit Co.

ing how cars were operated over the tracks, and of the certainty that a car would soon come, turned his horses directly across the track, without looking or listening to see whether a car was approaching or not. Instead of looking or listening, he deliberately turned his back upon the car and disabled himself from seeing its approach. He continued in that position till the shying of one of the horses caused him to look around when the car was almost upon him. There was nothing, during the whole five minutes he says he stood there after swinging his horses eastward across the track, to have prevented his seeing the car, if he had looked, or to prevent his swinging the horses back to their original position, where they would have been out of danger. It can no longer be doubted in this State that it is the duty of a person, situated as the plaintiff was, to exercise reasonable care to avoid injury from the negligence of another. Zumault v. Railroads, 175 Mo. 288; Cooley on Torts (2 Ed.), 674; Little v. Hackett, 116 U. S. 371; Moore v. Railroad, 176 Mo. 528. (3) The court erred in giving the first and second instructions on behalf of plaintiff. It was not only the duty of plaintiff to look and listen before swinging his horses across the track, but it was a continuous duty to look out and swing them back and let the car pass without being delayed. Kelsay v. Railroad, 129 Mo. 372; Hook v. Railroad, 162 Mo. 382; Gahagan v. Railroad, 55 L. R. A. 446, note. Each of these instructions should have added to it "the logical and necessary corollary" that if the failure to look and ascertain that the car was coming, when by so doing the plaintiff might have turned his horses back off the track in time to have avoided the collision, contributed to the collision, the plaintiff cannot recover. Holwerson v. Railroad, 157 Mo. 216; Nellis on Street R'ys, pp. 383-4; Cooley on Torts (2 Ed.), sec. 812; Beach on Cont. Neg. (3 Rev. Ed.), sec. 25; Eswin v. Railroad, 96 Mo. 297.

*A. R. Taylor* for respondent.

(1)   Appellant's first contention is, that the trial court erred in overruling its motion to require the plaintiff to elect on which assignment of negligence he would proceed.   This proposition is made in the Supreme Court, urging that a court should require a party to elect on what part of his case he should proceed to trial.   There may be a great number of acts of negligence causing an injury and making the cause of action. Yet the plaintiff must choose which of these he will rely upon.   This would be a new code of practice—and one that is wanting in those essential elements of the law, reason and justice.   Counsel abstains, as might be expected, from offering a substantial reason for his departure from the old and honored code of practice. In enumerating the essentials of a petition the code prescribes that it shall contain "a plain and concise statement of the facts constituting a cause of action without unnecessary repetition," etc.   Now, one of the facts constituting this cause of action was the alleged failure of the motorman to keep a vigilant watch and to stop the car within the shortest time and space possible.   This, the petition alleges, "Directly contributed to cause said collision and plaintiff's said injuries."   Yet counsel says this is a separate cause of action.   If so, then of course the plaintiff could recover on it.   For it is a principle of law that a party may have as many recoveries as he has causes of action.   If counsel could establish that every act of negligence that contributes to cause an injury is a separate cause of action upon which a recovery might be had, he would set in force a rule disastrous to wrongdoers.   A suit could in this case, then, if he be taken as a prophet of the law, be maintained for the common law negligence and injury.   And then again for the violation of the ordinance and injury to which it contributed.   And in

reply to his plea of *res adjudicata*, we could prove by him that the two causes of action were distinct and the plea *res adjudicata* not good, for a judgment in one cause of action could have no effect in another. We do not think this contention serious. As to his contention that one ground is founded in tort, the other in contract, he goes back to the graveyard where repose the remains of the Fath case, and calls up its ghost to prove that a law can not be a law unless his client agrees to obey it, and thus he says that a duty imposed by an ordinance depends not on the sovereign will, which declares the law, but upon the agreement of his client to obey the law. Should his client not agree to obey the law, then it is no law. This, we think, this court has in recent years held to be not a sound or correct interpretation of what a law is. There is no necessity that the appellant should have agreed to obey the Vigilant Watch Ordinance. It was passed by the Municipal Assembly of the city of St. Louis for the protection of the lives and limbs of citizens on the streets. There is nothing contractual about it. It is a police regulation, and the Legislature itself could not surrender to a corporation the power of the people to make useful laws for the protection of life and health of citizens. Constitution, art. 12, sec. 5; Matthews v. Railroad, 121 Mo. 316; Hutchinson v. Railroad, 161 Mo. 253; Weller v. Railroad, 164 Mo. 199; Riska v. Railroad, 79 S. W. 449. (2) There was nothing in the evidence to warrant the plaintiff to believe that appellant would violate the law. He swears that he did not expect a car would run into him while he was trying to get out of the way. In this state of the record, under all authorities, he had the clear right to assume that the law would be obeyed and to act on that assumption. Petty v. Railroad, 88 Mo. 319; Crempley v. Railroad, 111 Mo. 158; Jennings v. Railroad, 112 Mo. 276; Hutchinson v. Railroad, 161 Mo. 254; Weller v. Railroad, 164 Mo. 199; Riska v. Railroad, 79 S. W. 449.

BRACE, C. J.—This is an appeal by the defendant from judgment in favor of the plaintiff for the sum of six thousand dollars in an action for personal injuries.

The cause of action stated in the petition is as follows:

"That on the 1st day of February, 1901, the plaintiff was lawfully driving a team of horses attached to a loaded wagon northward on Broadway at its intersection with Buchanan street, when the wheels of the wagon he was so driving went into a hole in said streets at their intersection, and said team were unable to pull the wagon further and became stalled, and in endeavoring to get said wagon pulled out of said hole, said team were upon the track of the defendant St. Louis Transit Company, and whilst said team were so on the track of said St. Louis Transit Company on said streets at said place, and whilst said wagon and the wheels thereof were at and near said defendant's track, the defendant St. Louis Transit Company's motorman and conductor in charge of its south-bound car carelessly and negligently and without using ordinary care to control or stop said car, caused and suffered said car to collide with said team and a part of said wagon whereby plaintiff was thrown from said wagon to the street, and one of the horses of said team was thrown and fell upon the plaintiff, greatly and permanently injuring plaintiff upon his body, legs and feet, causing a concussion of the brain which rendered him unconscious. His foot was thereby crushed, bruised and injured, and the bones thereof and the ligaments, tendons, muscles and flesh thereof were fractured, ruptured, displaced and torn and plaintiff was permanently injured thereby.

"And for another and further assignment of negligence of defendant St. Louis Transit Company the plaintiff avers that at the time of his said injuries, there was in force in the city of St. Louis, an ordinance of said city, whereby it was provided that motormen and

conductors of street cars should keep a vigilant watch for vehicles and persons either on its track or moving towards it and upon the first appearance of danger to such vehicle or person, the car should be stopped within the shortest time and space possible, and plaintiff avers that at the time of said collision and his injuries defendant's motorman and conductor in charge of its said car failed to keep such vigilant watch and failed to stop said car within the shortest time and space possible upon the first appearance of danger to said vehicle and plaintiff, which violation of said ordinance directly contributed to cause said collision and plaintiff's said injuries.''

The answer was a general denial and the following plea:

''For another and further defense to said petition, defendant avers that whatever injuries the plaintiff sustained were occasioned by his own carelessness and negligence in driving in front of defendant's moving car while the same was in close proximity to him.''

The facts in the case disclosed by the evidence are substantially as follows:

The plaintiff, a young man aged about twenty-four years, in the employ of one Merten as driver of a coal wagon, at ten dollars and fifty cents per week, was, on the first day of February, 1901, driving a two-horse team and wagon, loaded with coal, on Broadway in the city of St. Louis, on which street the defendant operates its street cars upon two tracks: north-bound cars going on the east track, and south-bound cars on the west track. The plaintiff was driving north on the west side of Broadway, parallel with and distant from the west track about three feet, when near the intersection of Broadway with Buchanan street the front wheels of his wagon went into a hole in the street and his team stalled; he succeeded in getting the front wheels out, but when the hind wheels went into the hole, in order to extricate them he had to swing his horses towards the

east across the west track, which brought the fore
wheels against or very near the west rail of that track,
and when he had done so and the wagon and team were
in this position, the plaintiff standing on the double-
trees urging his horse to the pull, the team was struck
by one of defendant's south-bound cars, the wagon
turned around, the plaintiff thrown under one of the
horses, rendered unconscious, one of his feet mashed
and his body otherwise bruised. From the injury to
his foot he suffered great pain, was confined to his bed
for five months, afterward used crutches for about six
weeks, and then a cane for about two weeks, and since
has been able to walk without either, but when the foot
touches anything hard it hurts. He was under surgical
treatment eight months. The surgeon who attended him
testified that the foot had been crushed and laid open,
that there was a cut extending from the tip of the large
toe to the upper part of the foot, that blood poisoning
set in, the tissues sloughed off and amputation of the
big toe became necessary; that in cutting off the toe it
became necessary to clip one of the phalanges or end
bones that protruded, and that he will always be crip-
pled more or less; that the charges for his services are
between four and five hundred dollars and that they are
reasonable.

It was daylight when the accident happened—the
track was level—the view north for three or four blocks
was unobstructed.

The evidence for the plaintiff tended to prove that
the defendant's car was going at the rate of twenty
miles an hour, that no effort was made to stop the car
or check its speed before the team was struck, and that
it went thirty or forty feet after the team was struck
before it was stopped—that the team was on the track
some time before it was struck, plaintiff says four or
five minutes. Three other witnesses testify that the
plaintiff's team was on the track when they saw the
defendant's car approaching at a distance of from two

hundred and fifty to three hundred feet—that no effort was made to stop the car and that its speed was not checked until after the collision. The plaintiff's evidence further tended to prove that the car going at the rate of twenty miles an hour could have been stopped, with the brakes, in about 130 feet, and with the reverse in about 100 feet, and when going at the rate of fifteen miles an hour could have been stopped with the brake in 90 to 100 feet and with the reverse in about 75 feet.

The only witness called for the defendant was the motorman, who testified that he first saw the plaintiff and his team when he was one block north of where the team stood, that the horses were not then on the track but standing still beside it, that his car was going about ten miles an hour and that when the car was about fifty or sixty feet from the horses they swung across the west rail, were struck, and the car ran about thirty feet further.

1. At the inception of the trial the defendant moved the court to require the plaintiff to elect on which one of the causes of action stated in the petition he will stand, upon the grounds: ''First, that said petition attempts to combine in one count both alleged common-law negligence and the alleged violation of an ordinance commonly called the vigilant watch ordinance; second, said petition attempts to combine in one count a cause of action *ex contractu* and a cause of action *ex delicto*''—and in the course of the trial the plaintiff was permitted to introduce said ordinance in evidence over the objections of the defendant. The overruling of the motion to elect, and the admission of the ordinance in evidence is assigned as error. These assignments of error were argued and considered in the case of Sluder v. Transit Co., 189 Mo. 107, in which the whole question is exhaustively treated in the opinions in that case, delivered at the last sitting of the Court in Banc on the first of June, 1905—and in which the ruling was adverse to the contention of defendant. Hence, we hold in this,

as we did in that case, which is on all-fours with this on these points, and for the reasons stated in the majority opinion therein, that the court committed no error in overruling the motion to elect, nor in admitting the ordinance in evidence.

2. At the close of plaintiff's evidence and at the close of all the evidence the defendant interposed a demurrer thereto, and the overruling of these demurrers is assigned as error.

On the main issue the case was submitted to the jury upon the following instructions:

For plaintiff:

"1. Although the jury should believe and find from the evidence that the plaintiff whilst trying to get his wagon out of a hole in the street (if the jury find that the wagon was so in a hole) and that in driving his horses attached to the wagon, got them upon defendant's track in Broadway, yet if the jury find from the evidence that after said horses were so upon said track they were in danger of being struck by defendant's south-bound car and that defendant's motorman saw said team on said track, and in danger of being struck by said car, and that after said motorman saw said team on said track and in such danger he could by the exercise of ordinary care have stopped said car and prevented said car from striking said team and neglected to do so and caused said car to strike said team and injure the plaintiff, then plaintiff is entitled to recover even if the jury should believe that he did not exercise ordinary care in pulling his horses on said track.

"2. If the jury find from the evidence in this case that on the 1st day of February, 1901, the defendant was operating the railway and car mentioned in the evidence for the purpose of transporting persons for hire from one point to another in the city of St. Louis, and if the jury find from the evidence that at said time Broadway and Buchanan streets at the places mentioned in the evidence were open public streets within

the city of St. Louis, and if the jury find from the evidence that on said day the plaintiff was driving a team attached to a wagon northward on Broadway, at its intersection with Buchanan street in the city of St. Louis, and that whilst doing so the wagon was stalled and in attempting to get his wagon away from the place where stalled, the plaintiff pulled the horses on the track of the defendant in said street, and if the jury find from the evidence in this case that whilst said horses were on defendant's track, defendant's motorman in charge of its car saw said horses on said track and in danger of being struck by said car as it moved along defendant's track, and if the jury further find from the evidence that said motorman after he saw said horses on said track and in danger of being struck and injured by said car, could by the exercise of ordinary care have stopped said car and averted striking said team and neglected to do so; and if the jury find from the evidence in this case that whilst said team was so upon defendant's track and in such danger, defendant's motorman in charge of its south-bound car caused or suffered said car to strike one of said horses, throw him down upon plaintiff and injure the plaintiff, and if the jury find from the evidence that defendant's said motorman did not exercise ordinary care in thus causing said car to strike said horse and injure the plaintiff, then the plaintiff is entitled to recover if he was exercising ordinary care at the time of his injury.''

For defendant:

''2. It was the duty of the plaintiff while approaching defendant's track in the street to look and listen, for the purpose of ascertaining whether a car was coming or not; and if you find from the evidence that plaintiff could have known of the approach of the car on the track by either looking or listening in time to have avoided a collision with the car, and that he either failed to look or listen, or, if he looked or listened, to

heed what he saw or to take any precaution to avoid a collision with the car when he might have done so by the exercise of ordinary care, then he was guilty of such negligence as defeats his recovery in this action, and your verdict must be for the defendant; *provided you further find that the defendant, by the exercise of ordinary care and prudence, could not have avoided the collision after it discovered the plaintiff's perilous position.*

"3.    You are further instructed that while the rights of plaintiff and defendant to the use of the street were equal, mutual and reciprocal, yet, if you find from the evidence that defendant's car moved upon a fixed track and was propelled by a power less easily controlled than a driver's control of his team, and was under such a momentum as to render it more difficult to stop than for the team to have stopped, then it became the duty of the plaintiff not to attempt to cross in close proximity to the approaching car, but to stop temporarily and let the car pass, and if you find from the evidence that by so doing the plaintiff could have avoided the collision and that he failed so to do, then you should find that the plaintiff was guilty of negligence, which defeats the plaintiff's right to recovery in this action, and your verdict must be for the defendant; *provided you further find the defendant, by the exercise of ordinary care and prudence, could not have avoided the collision after it discovered the perilous position of the plaintiff.*

"4.    The court instructs the jury that if they believe from the evidence that plaintiff saw said car coming, or in the exercise of ordinary care could have seen said car coming, and that he was then standing on the double-tree of his wagon and that he could have avoided said accident by jumping from said wagon, and that in the exercise of ordinary care he would have jumped and that he failed to do so and thereby directly contributed to his injuries, he cannot recover and your verdict must

be for the defendant; *provided you further find that the defendant, in the exercise of ordinary care and prudence, could not have avoided the collision.*

"5.   The court instructs the jury that if from the evidence the jury believe that defendant's motorman operating the said car saw plaintiff's wagon and horses resting near defendant's track, but so far away from said track as not to be in danger of being struck by said moving car, defendant's motorman had the right to assume that plaintiff's horses would remain in said position and had the right to move his car forward and if the jury further believe from the evidence that thereafter plaintiff's horses changed their position and got in front of said car and thereby caused or directly contributed to plaintiff's alleged injuries and that the motorman in charge thereof could not then stop his car and avoid said accident, plaintiff cannot recover and your verdict must be for the defendant."

Instructions numbered 2, 3 and 4, as asked for by the defendant, were modified by the court by adding the proviso in each, in italics.   The modification of these instructions and the giving of the two instructions aforesaid for the plaintiff is assigned as error.

3.   It is contended for the defendant that the demurrer to the evidence ought to have been sustained because the plaintiff turned his horses directly across the track without looking or listening for an approaching car and continued in that position when there was nothing to prevent his swinging his horses to their original position where they would have been out of danger from the approaching car which he might have seen if he had looked.   This contention is not well grounded.   Plaintiff testified that when he swung the horses across the track he looked and there was no coming car in view; that he did not look again because he was busy getting out of the hole; that the horses were on the track slipping and one of them was shying; that he was holding himself on the wagon with one hand and

holding the horses up with the other; that he was on
the double-tree urging and watching both his horses
and the hind wheels of the wagon to see if he was
making any headway, and the horses were just stretched
out to make the pull that would have drawn him out
when they were struck by the car. He also says that he
did not look again because he thought that if a car was
coming the man would have sense enough not to run
him down. His evidence and the evidence of three other
witnesses who saw the collision tend strongly to prove
that when he swung his horses across the track it was
necessary for him to do so in order to extricate his
wagon from the hole in the street in which he was
stalled and that when he did so the car was not in such
close proximity as to render the movement apparently
dangerous and that thereafter he made every rea-
sonable exertion to clear the track and go his way as
he had a right to do either over the track or beside
it. In order that he might do so it was necessary that
his attention should be directed to the management and
movement of his team and wagon, and he cannot be
charged with negligence because while doing so he did
not keep continuous watch for an approaching car. He
could not be reasonably expected to do so considering
his situation and the nature of his engagements, and
as the view of the track was unobstructed for a dis-
tance of at least a block and his situation was plainly
observable for that distance, he had a right to expect
that he would not be run down by an approaching car.
The only evidence in the case tending to prove negli-
gence on the part of the plaintiff, contributing to his
injury, was that of the defendant's motorman, who
testified that he saw the plaintiff and his team when
he was a block north of where the team stood, that at
that time the team was standing beside the track a suffi-
cient distance therefrom to be in a place of safety, and
that it remained in that position until the car was about
fifty or sixty feet from the horses, when they were

turned across the track in front of the car. This evidence of the motorman was flatly contradicted, not only by the plaintiff himself, whose evidence tended to prove that his horses were on the track when the car was one block distant and when the motorman says he first saw them, but by three other witnesses who saw the car coming and who testified that they saw the horses on the track when the car was distant from two hundred and fifty to three hundred feet—a distance affording him ample time and space in which to have stopped or checked the car, and avoided the injury, and yet, as all the evidence tended to prove, he did nothing either to stop the car or check its speed, thereby showing, if the evidence for the plaintiff is to be taken as true, as upon demurrer it must, such a reckless disregard of human life as to authorize a recovery, even though the plaintiff may have been negligent in some respect in being on the track at the time. The evidence for the plaintiff tended to prove the cause of action set up in the petition; and that of the defendant, the defense set up in the answer, and there never was a clearer case for a jury, and the court committed no error in overruling the demurrers to the evidence.

4. The instructions given for the plaintiff, the modification of the defendant's instructions as asked, and the refusal of the court to give three other instructions asked by the defendant are attacked upon the ground that the effect thereof was to eliminate from the consideration of the jury any contributory negligence of the defendant; and the argument in support thereof is on the same line with that made in support of the demurrer to the evidence.

The issues to be submitted to the jury under the pleadings and on the evidence in this case were plain and simple. The charge in the petition is that while the plaintiff's horses were on the defendant's track and his wagon at or near it, the defendant's servants carelessly and negligently caused the defendant's car

to collide therewith without using ordinary care to prevent the collision. Plaintiff's evidence tended to prove the cause of action stated in the petition. The defense was that the plaintiff negligently assumed this position with his wagon and team when defendant's car was in such close proximity thereto as that the collision could not have been avoided by the exercise of ordinary care; and the evidence for the defendant tended to prove this defense. These issues were submitted to the jury by instruction 1 for the plaintiff and instruction 5 for the defendant, and when read together these instructions presented the main issues of the whole case so fairly and squarely to the jury as to point the way to a correct verdict upon the weight of the evidence. While the other instructions given were not inconsistent with these two, the case would have been better and more clearly presented had the additional instructions been omitted, which, while they did not change, may have to some extent obscured the meaning of the instructions as a whole; but when these instructions are read as a whole, it will be seen that the only negligence of the plaintiff pleaded in the answer, of which there was proof, and which could avail as a defense to his action, was duly presented to the jury as sufficient ground to defeat a recovery and authorize a verdict for the defendant—and that no negligence of the plaintiff of which there was any proof and which could have been of any service as a defense to the plaintiff's action was withdrawn from the consideration of the jury, unless we are prepared to hold that a traveler upon the street must at all times, when he happens to be on a railroad track therein, keep a continuous watch for an approaching car at the peril of his life or limb, and that a failure to do so will exempt the railroad company from any liability for failure to use ordinary care to prevent injury to him—and as a necessary corollary, that such traveler has no right to assume that the servants of a street railway company will not, so

far as they can, by the exercise of ordinary care, refrain from injuring him—a duty imposed upon them not only by ordinance but by the ordinary instincts of humanity. We are not willing to so hold, and such is not the law in this State, in which the doctrine is well established, that although an injured party may have been guilty of negligence contributory to his injury in being on a railroad track, the company is still liable for the injury if it could have been prevented by the exercise of ordinary care on the part of the company after the discovery of the danger in which the injured party stood. [Isabel v. Railroad, 60 Mo. 475; Harlan v. Railroad, 65 Mo. 22; Zimmerman v. Railroad, 71 Mo. 476; Kelley v. Railroad, 75 Mo. 138; Werner v. Railroad, 81 Mo. 368; Scoville v. Railroad, 81 Mo. 434; Dunkman v. Railroad, 95 Mo. 232; Guenther v. Railroad, 95 Mo. 286, 108 Mo. 18; Kellny v. Railroad, 101 Mo. 67; Hanlon v. Railroad, 104 Mo. 381; Fiedler v. Railroad, 107 Mo. 645; Sullivan v. Railroad, 117 Mo. 214; Sinclair v. Railroad, 133 Mo. 233; Morgan v. Railroad, 159 Mo. 262; Klockenbrink v. Railroad, 172 Mo. 678; Roenfeldt v. Railroad, 180 Mo. 554; Scullin v. Railroad, 184 Mo. 695.]

Plaintiff had as much right on the street as did defendant, and in pursuing his way to be on that part of the street over which the defendant's track was laid. It was his duty to pursue his way with due care for his own safety, and the safety of others, and if, negligent of the former, he went in the way of defendant's car in such close proximity thereto as that the servants of the defendant could not by the exercise of ordinary care prevent injury to him, he has himself only to blame for his injuries, and he ought not to recover, and so the court in effect instructed the jury. On the other hand, it was the duty of the servants of the defendant to pursue their way on defendant's track in the street with due care for the safety of all persons that might be on the

track and not to injure them if within their power to prevent it by the use of ordinary care, and if disregarding this duty they did thereby injure the plaintiff, he ought to recover for those injuries, and the court in effect so instructed the jury, and this is all there was to the case. The verdict was the legitimate fruit of such instructions and of the weight of the evidence, which, as a whole, tended to prove that after defendant's motorman discovered plaintiff's team upon the track at a distance within which he could easily have stopped his car or checked its speed so as to have prevented the collision, he took no steps whatever to do so, but recklessly pursued his way at a high rate of speed, thereby causing his car to collide with the team and wagon and to inflict the injuries of which the plaintiff complains.

The verdict was for the right party, and we find no error in the action of the court on the instructions, either given or refused, that calls for a reversal.

5. No error is assigned upon the instructions on the measure of damages, but it is contended that the verdict is so excessive as to evince passion and prejudice on the part of the jury. We do not think so, in view of the plaintiff's serious injuries which have been fully set out. While the verdict is a liberal one, it does not shock our sense of justice or furnish any reasonable ground for the assumption that it was the product of partiality or prejudice on the part of the jury. On the whole record, finding no substantial error in the trial affecting the merits of the case, the judgment of the circuit court will be affirmed.

All concur except that *Marshall, J.*, does not concur in the rulings in the Sluder case referred to in the opinion.