CATHERINE MILLER, Respondent, v. FORD F. HARVEY and R. J. DUNHAM, Receivers of the METROPOLITAN STREET RAILWAY COMPANY, a Corporation, Appellants.

Kansas City Court of Appeals, June 10, 1918.

1. **NEGLIGENCE: Street Railways: Humanitarian Doctrine.** The plaintiff sued to recover damages from defendant for the negligent killing of her husband. The deceased was driving a wagon on a certain street, and while doing so, seeking to cross the street, was run into by defendants' street car and killed. The evidence tended to show that the motorman saw the deceased in a position of peril but failed to stop the street car in time to avoid the collision. *Held*, that in view of the facts that appeared in the evidence the motorman should have stopped the car, and that the defendants' demurrer to the evidence was properly overruled.

2. ———: Instructions: Damages: Statutes. Sections 5426-5427, Revised Statutes 1909, are remedial but under them aggravating circumstances may be taken into consideration and punitive damages allowed where there is shown to exist willfulness, malice and recklessness, etc. Section 5425, Revised Statutes 1909, is both penal and remedial and it is proper to instruct the jury in a case, under this section, that they may take into consideration all the facts and circumstances in evidence bearing upon the killing.

3. ———: ———: ———. Where a court gives instructions that assume disputed facts, such instructions will be held erroneous.

Appeal from Jackson Circuit Court.—*Hon. Clarence A. Burney,* Judge.

REVERSED AND REMANDED.

*Reinhardt, Schibsby & Muenich* for respondent.

*Clyde Taylor* and *Chas. A. Stratton* for appellants.

BLAND, J.—This is an action for damages sustained by plaintiff on account of the killing of her husband on July 2, 1915. The case was pleaded and recovery was had upon the "humanitarian" or "last chance" doctrine.

Defendants' first point is that their demurrer to the evidence should have been sustained. Taken in its most favorable light to plaintiff, the evidence shows that on said date the deceased, a man sixty-nine years of age, while engaged in his business as a market gardener, stopped his wagon in front of a grocery store on the south side of Fifteenth Street, midway between Locust and Cherry Streets, in Kansas City, Missouri. The wagon was headed east. Deceased after having transacted his business in said store returned to his wagon, got upon the seat and immediately started up, pulling his horse toward the north and thence on to defendants' eastbound street car track. He did not look around but continued looking in the direction in which his wagon was going, to-wit, toward the north, and apparently oblivious of the fact that a car was approaching from the west. The distance between the curb and the first rail of the eastbound street car track was seventeen and one-half feet. The distance between the outer rails of the two tracks was fifteen feet. The evidence was that an ordinary horse is about eight feet in length. At the time deceased started his horse and wagon there was an eastbound street car proceeding upon the south track of the double tracks there present, at the rate of ten miles per hour, one hundred and thirty-

two feet from the point where deceased drove upon said track. Plaintiff proceeded from the curb to the point of collision, north of where he started up his horse, at a speed described by one witness as a slow walk. Of course this might mean that deceased was proceeding at the rate of speed of even less than two or three miles per hour. However, he must have been proceeding at a rate of a little more than two miles per hour for the reasons hereinafter given.

When the front wheels of the wagon reached the middle of the eastbound track, the car struck the left front wheel throwing plaintiff from the wagon ten feet ahead of it on to the track. At that time the horse had cleared the eastbound track to the north and was uninjured. The car at no time slackened its speed before striking deceased.. After striking deceased the car ran one hundred feet before it was finally stopped. The evidence shows that deceased was yet alive on the track eighty feet east of the collision, for at that time he was between the front and rear trucks of the car and uttered a scream. Immediately after the car stopped the motorman backed it, one wheel again passing over the body of deceased. When the car finally stopped deceased was found dead between the north wheels of the front truck. A witness on the part of plaintiff testified that at the moment of the collision the motorman was leaving the front of the car. Another witness testified that when he looked up upon hearing the crash he saw the motorman and conductor standing back in the body of the car. At this time the conductor was evidently urging the motorman to return to his place of duty which the motorman did and was thereafter seen apparently moving an appliance, after which the car stopped within ten feet. When the car stopped the wagon was in front of it but neither it nor the horse was injured. The motorman testified that the horse and wagon while in front of the store was headed toward the east and that he viewed the

deceased from that time until the time of the collision; that he did not think that deceased was in a position of peril until he, the motorman, was within thirty-five or forty feet of him, at which time deceased was going upon the track, "when the horse's head got on the rail." However, he did nothing to stop the car until he got within twenty feet of him. The evidence shows that the car was going down a grade of 4.01 feet. The motorman stated that the power was off and that he was coasting down the hill and that when he got within twenty feet of the deceased he set the emergency brake and locked the wheels and reversed the car but did not drop any sand. That this had the effect of locking the wheels; that the car was almost stopped when the wheels of the wagon "stuck up through the window glass." At that time he stepped back out of danger. He testified that the car stopped before he returned to the vestibule. He testified that under the circumstances the car could have been stopped within forty feet. There was other testimony that it could have been stopped in thirty feet. No gong was sounded nor warning given.

Under these circumstances defendants say their demurrer to the evidence should have been sustained, because, defendants say, that the time that elapsed between the time deceased got into a position of danger and the time of the collision was so short that the motorman had no chance in which to avoid the accident. With this we are unable to agree. Deceased was in peril before the horse's feet reached the first rail of the south tracks. [Ellis v. Railway, 234 Mo. l. c. 686.] Under the facts the jury could have found that the motorman saw deceased approaching a position of peril and oblivious thereof at the time deceased turned his horse toward the north to cross the track. The horse traveled seventeen and a half feet between the curb and the first rail and had gotten across the eastbound rails before the collision, there-

fore he must have traveled seventeen and a half feet plus the distance between the eastbound track and his own length before the collision. If the eastbound tracks were five feet in width and the horse was eight feet in length, then the horse traveled thirty and a half feet between the time the jury might have found that the motorman saw deceased in a position of peril and oblivious thereof and the time the car struck the wagon. During this time the evidence' shows that the car ran one hundred and thirty-two feet at the rate of ten miles per hour. If the car covered this space going at that rate of speed, the distance was covered in nine seconds. If the horse went thirty and a half feet while the car was going one hundred and thirty-two feet at ten miles per hour, or in nine seconds, then the horse was traveling at the rate of 2.31 miles per hour, and as the evidence was that the horse was going at a rate described as a slow walk, we may assume from all the evidence that it was proceeding at the rate of 2.31 miles per hour. The motorman could have stopped the car within thirty feet; he had one hundred and forty-two feet in which to stop it before striking deceased, as he ran ten feet before running over deceased after the collision with the wagon. Under these circumstances the motorman had more than nine seconds in which to take in the situation, coordinate his muscles and stop the car. The car was equipped with all the latest appliances for stopping cars. It required but a moment for the motorman to begin to use the appliances for that purpose. There is no question but under the evidence the motorman could have stopped the car before it ran over deceased, and if the facts that are assumed herein appear at the next trial the demurrer to the evidence should be overruled.

Defendants complain of the giving by the court of plaintiff's instruction No. 5. This instruction reads as follows:

"The court instructs the jury that if you find for the plaintiff you shall allow her a sum not less than $2000 and not more than $10,000, in the discreation of the jury, and in determining the amount you will allow her you may take into consideration the pecuniary loss occasioned to the plaintiff by the death of her husband, and you may also take into consideration all the facts and circumstances in evidence bearing upon the killing of plaintiff's husband."

It is defendants' contention that under the rule laid down in the case of State ex rel. v. Ellison, 195 S. W. l. c. 725, this instruction permits the jury to award plaintiff punitive damages and that such damages were neither pleaded nor proved. This contention is not well taken. This suit was brought under section 5425, Revised Statutes 1909. The suit under consideration in the case cited was brought under sections 5426-5427, Revised Statutes 1909. The sections under consideration in that case allow the recovery of compensatory damages. This has always been the ruling although aggravating circumstances may be taken into consideration and punitive damages allowed under these sections where there is shown to exist willfulness, malice and recklessness, etc. (Troll v. Gas Light Company, 182 Mo. App. l. c. 608; Johnson v. Mining Co., 171 Mo. App. 141), section 5425 is both penal and remedial (Boyd v. Railroad, 236 Mo. 54) and it is proper in a case under that section to instruct the jury that they may take into consideration the facts and circumstances in evidence bearing upon the killing. An instruction of this kind has been repeatedly approved. [Foster v. West, 194 Mo. App. l. c. 105; Kiser v. Met. St. Ry. Co., 188 Mo. App. 169; Loomis v. Railroad, 188 Mo. App. 203; Baldwin v. Harvey, 191 Mo. App. 233; Holmes v. Railroad, 176 S. W. 1041; Roberts v. Trunk, 179 Mo. App. 358; Harding v. Railroad, 248 Mo. 663; Boyd v. Railroad, supra.]

Defendants complain of the giving by the court of plaintiff's instructions Numbers 2 and 3. Plaintiff's instruction Number 2 told the jury that if the motorman could have avoided the collision by the "use of his warning gong" after he saw or could have seen that deceased intended to go upon the track, that their verdict should be for plaintiff. Plaintiff's instruction Number 3 told the jury that if the motorman could by the use of the means at hand have avoided killing deceased by slackening or stopping the car after he saw that a collision was likely, their verdict should be for the plaintiff. It is to be noticed that both of these instructions directed a verdict for plaintiff but failed to have the jury find that plaintiff was oblivious to his peril. Of course, if deceased was not oblivious of his peril but looked and saw the approaching car and willfully drove upon the track, then plaintiff was not entitled to recover. However, plaintiff contends that there is no issue as to obliviousness in the case as plaintiff says the case was pleaded and tried upon the theory that deceased was at all times in a position of peril and oblivious thereof. To this we cannot agree. Defendant introduced evidence tending to show that the motorman was ringing his bell all the time after he left Locust Street, or a distance of one hundred and thirty-two feet before deceased was struck; that deceased was seen by one witness, upon the wagon, after deceased came out from the store and that the latter "got on the seat and grabbed hold of the lines and pulled his horse right across the rail right in front of the car. When the motorman began pounding his bell as hard as he could, the driver began hitting the horse with the lines and jerked it to hurry the horse up. The horse made a lunge after that to the north. The car struck the wagon right at the front wheel." Another witness testified that "the driver struck his horse as he started to cross the track—tried to hurry on." This evidence taken in its most favorable light to defend-

ants shows that when the motorman began ringing his bell one hundred and thirty-two feet away, or at the time deceased left the sidewalk on his wagon, deceased heard the gong and began hitting the horse with the lines and jerked it to hurry the horse on across the track. There was other evidence that deceased drove on the track so near the car that the motorman had no chance to avoid the collision. Of course, all these facts were denied by plaintiff's testimony but in view of defendants' testimony tending to show that deceased was not oblivious to his peril, that element should not have been assumed as a fact in plaintiff's instructions and the court erred in giving them. We also think that other parts of these instructions assumed as a fact that deceased went upon the track without looking for or becoming aware of the car.

The other points made against the instructions are not well taken. The evidence was such that the failure to ring the gong was properly submitted. There was sufficient evidence of probative force to go to the jury as to whether or not the gong was rung. It is true that many of defendants' witnesses testified that it was and many others on the part of plaintiff testified that they did not hear it. Plaintiff's witnesses testified that they did not anticipate anything unusual and were not listening for the gong, but many of them stated that they heard the crash and one of them that he heard the scream of a woman in the car. This shows that plaintiff's witnesses were in a position to hear and did hear, for they heard the scream and the crash and if these were heard by them, it is fair to assume that they would hear the sounding of a loud gong if one were rung. Where witnesses of equal credit give positive evidence that a signal was given their testimony is, as a general rule, of more weight than that of witnesses who say that they did not hear it, but much depends upon the position, attention and credibility of the witnesses, and

the ultimate question, whether the signal was given or not, is usually one for the jury. [Dutcher v. Railroad, 241 Mo. 137; Hanlon v. The Mo. Pac. Ry. Co., 104 Mo. 381; Murray v. The Mo. Pac. Ry. Co., 101 Mo. 235.] Whether or not plaintiff's witnesses could or could not hear the alarm given by the gong on the car was under the facts and circumstances clearly for the jury.

We have examined defendants' objections to the giving and refusal of other instructions and find no merit in them. Defendants raise various points as to the admission of testimony. There was no error in permitting plaintiff to show that the motorman left his post of duty and after finally stopping the car backed it over deceased. This evidence was a part of the *res gestae* and threw some light on the negligence of the motorman in failing to stop the car and to avoid the accident as alleged in the petition. Other objections to the admission of evidence need not be passed upon as they can be easily met and will probably not come up at another trial.

The judgment is reversed and the cause remanded. All concur.